Hemphill, Ch. J.
The errors assigned are the overruling of the defend *258 ant’s demurrer, the refusal to give certain charges as prayed for by the defendant to the jury, and the overruling the motion for a new trial.
The record does not show the disposition which was made of the instructions asked by the defendant, and it will be unnecessary to examine them with the view of ascertaining their correctness as legal propositions applicable to the facts of the case. The giving- or refusal of instructions cannot be made the ground of reversal unless it be shown that they were either given or refused. (Hill v. Crownover, 4 Tex. R., 8.) Nor does the transcript furnish a copy of the demurrer. The certificate of the clerk shows that an answer was filed, and this may have responded to the law as well as the facts, and the entry shows that the defendant excepted to the overruling of the demurrer. This action of the court required, as an indispensable prerequisite, that a demurrer should have been pleaded, and we may therefore with propriety examine the alleged error in its disposal.
The grounds of error in this ruling of the court as assigned are—
1st. That the petition contained no allegation that the contract, being for land, was in writing.
2d. That the petition shows that the contract was verbal and that it was a contract concerning land, and was therefore void under our statute of frauds.
3d. Because it appears from the petition that it was a contract without consideration, and therefore void.
4th. Because it appeared by the petition to be, as it really is, a contract against public policy.
The first ground of error raises a question of pleading of no great importance and the discussion of which need not be pursued. I will only observe that I am not aware that it has been deemed necessary under the statute of frauds to allege in a declaration at law or in a bill in equity for specific performance that the agreement sued upon is in writing. (2 Stark. Ev., p. 341, note a; Rob. on Fr., p. 156; Welf. Eq. Pl., p. 3.)
The second cause of error presents the questions whether, under the laws of this State, a trust or confidence in lands can be created and declared by parol or verbally as well as in writing.
Tlte proposition assumed in the brief is that all verbal contracts concerning lands are void under onr statute of frauds. Now, the only provision bearing on such contracts is that clause of the first section which declares that no action shall be brought whereby to charge any person upon any contract for the sale of lands, slaves, tenements, or hereditaments, or the making any lease thereof, for a longer term than one year, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or “ some person by him thereunto lawfully authorized.” (Hart. Dig., p. 454.)
The only contract in relation to lauds which "the statute requires to be in writing is the contract for their sale. The terms of the act should doubtless be liberally construed for the suppression of the mischiefs it was designed to prevent, and all agreements within its spirit and scope should be brought under its operation. To go further would be to assume legislative functions and transcend the authority of a judicial tribunal. The contract under consideration was intended to create an agency or trust concerning lands, and under no rational rules of construction can it be regarded as an agreement for tlioir sale or as embraced within the provision requiring such contracts to be in writing.
The position in the argument, that the contract, being verbal and concerning lands, is void, is based not upon the act of this State to prevent frauds and fraudulent conveyances, (Hart. Dig., p. 454,) but upon the English act for filie prevention of frauds and perjuries. (29 Cas. II, ch. 3.) The latter statute contains provisions similar to the clauses in the first section of the former, but there is an important difference in their terms in their respective Chrises concerning contracts for the sale of lands. The words of the English .'aw are that no action shall bo brought, &c., upon any contract or sale of lands, tene *259 ments, or hereditaments, or any interest in or concerning them. The expressions in the statute of this State are in substance that no action shall be brought, &c., upon any contract for the sale of lands, tenements, and heredit-aments, &e. Tlie former requires contracts for any interest in lands to be in writing. (Wil. on Trustees, p. 44.) An agreement such as the one under consideration might perhaps have been considered in England as embraced within the terms of the clause above cited of their statute had not a subsequent section, to which reference will shortly be made, expressly mentioned trusts of lands and the evidence by which they should be manifested and proved. (Wil. on Trustees, p. 44.) But a contract for any interest in lands is widely different from a contract for the sale of lands; and though such a trust or confidence as tlie one under review might be embraced in tlie comprehensive terms of the former, it certainly is embraced by neither the terms nor spirit of the latter.
But the English statute contains provisions in relation to trusts and confidences in lands by which such argreements as set forth in the petition have been controlled, but which have not been made of force in this State.
The 7th section provides that all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments shall be manifested or proved by some writing signed by the party who is enabled by law to declare such trust, &c.
Tlie 8th section declares that all trusts or confidences of lands or tenements which arise or result by tlie implication or construction of law or are transferred by an act or operation of law shall be of tlie like force and effect as if the statute had not been made.
The 9th requires that all grants and assignments of any trust or confidences shall likewise be in writing, or be utterly void and of none effect.
These provisions, which have been adopted in most of tlie States of the United States, prohibit the creation of trusts of lands unless manifested or proved by writing, or unless they result by implication or construction of law; but under our laws, express and implied or constructive trusts, as to their creation, or rather proof, stand upon the same footing. The special contract under which the former are raised, and the facts from which the latter result, may alike be proven and sustained by parol evidence.
The validity of tlie contract between the parties in this suit is not. in any degree affected by the fact that it was made by parol. If such an agreement, expressed in writing, would have been valid under the statute of frauds, it will without question,' independent of the statute, be valid, though not proven or manifested by writing.
Nor can the validity of the contract be doubted, if it be sustained by a sufficient consideration and be consistent witli public policy; which are points to be subsequently examined. An agreement between two that one should purchase property for the joint benefit of both is not. prohibited by or contrary to law. The numerous decisions against their validity rest upon tlie fact that they were not proven by written evidence, and not upon their intrinsic illegality.
In Bartlett v. Pickesgill (4 E., 576, note b) the defendant had bought an estate for the plaintiff;' but there was no written agreement between them, nor was any part of the purchase-money paid by the plaintiff. The defendant articled for the estate in his own name, and refused to convey to the plaintiff; and, on a bill being brought to compel a conveyance, the question was not as to the validity of the contract, but whether it could be established by parol evidence. The lord keeper held that such evidence was not competent; that to allow it would be to overturn the statute, which declared that no trust shall he of land unless there be a memorandum in writing, except such trusts as arise by operation of law. It was not like the ease of money paid by one man and a conveyance taken in the name of auother. If Bartlett had paid any money, the evidence would have been admitted, or if there had been any fraud to prevent an execution of the agreement.
*260 It was not questioned that, independent of the statute, parol evidence would have been admissible, or that the contract was in itself legal and would have been binding had it been susceptible of proof.
The only difference between the trust in the above suit springing out of a special -contract and that resulting from the fact of the payment of the purchase-monej1- is that the latter could be established by parol; and this arose from the fact that such trusts were exempted from the operation of the statute. For various cases in which trusts inlands depending upon parol agreements have been held invalid because not sustainable by parol proof, see 1 Watts & S., 372; 2 Rich. Eq., 102; 6 Har. & J., 252; 4 Bibb, 102; Rob. on Fr., 101; 2 Atk., 71. That parol trusts could be created before the statute of frauds, see 2 Hayw., 131; 4 Kent, 305; Wil. on Trustees, 46; 2 Story Eq., sec. 972; 2 Fonbl. Eq., b. 2, ch. 2, sec. 4, n. x.
It will be remembered that the questions in this cause are presented on demurrer, which admits the facts well pleaded in the petition. The tender of the purchase-money, as pleaded, is consequently admitted, and renders it unnecessary to determine what would be the law of the case provided the plaintiff’s portion of the purchase-money had not been paid or tendered in conformity with the agreement.
The question presented on the third special ground of demurrer is whether the contract is supported by a sufficient consideration.
.This point will be examined hut very briefly. A consideration may be defined to be something that is given in exchange, something that is mutual, or something which is the inducement to the contract, and it must be a thing which is lawful and competent in value to sustain the assumption. A valuable consideration is either a benefit to tiie party promising or some trouble or prejudice to the party to whom the promise is made.'" A mutual promise amounts to a sufficient consideration, provided the mutual promises be concurrent in point of time.
In this case the promises were mutual and'concurrent in point of time. The petitioner avers that it was to their mutual.advantage that the purchase should be made jointly, and that the defendant, in consideration of his trouble, &c., in bidding off the lot, was to have that part of the lot which adjoined his residence. We are of opinion that the facts show a sufficient consideration, and that the contract cannot be regarded as a nudum pactum, and therefore null and void. (1 Ca. R., 45; 8 Johns. R., 304; 15 Johns. R., 325; 10 Ir. N. C. R., 72; Law Magazine, vol. 3, p. 62.)
The fourth ground presents the important question whether the contract bo void as against public policy.
The solution of this question is by no means free from difficulty, nor are the decisions in such harmony as to relieve the mind from all doubt upon the subject.
That contracts against public policy are void and will not be carried into effect by courts of justice are principles of law too well established to require the support of authorities, and the only question is whether the agreement set forth in the petition be or not in violation of public policy or in fraud of the law. In Jones v. Carwell (3 Johns. Cas., 29) a note given for forbearance to bid at a public sale by the sheriff was held to be unconscientious and against public policy, and therefore void. The court say that “ the law has regulated sales on execution with a jealous care and enjoined such proceedings asare likely to promote competition. A combination to prevent such competition is contrary to morality and sound policy. It operates as a fraud upon the debtor and his remaining creditors by depriving the former of the opportunity he ought to possess of obtaining a full equivalent for the property which is devoted to the payment of his debts, and opens a door for oppressive speculation.” And in Doolin v. Ward (6 Johns. R., 194) it was decided that an agreement between two persons, not to bid against each other at an auction, but that one was to bid and divide with the other, was against public policy and void. (See 8 Johns. R., 444.)
*261 In 4 Johns. Ch. R., an agreement by the owner of an execution with certain persons to prevent the usual competition at a sheriff’s sale, and in order to leave a small balance on the execution for the purpose of seizing other property of the debtor, was held to be fraudulent, and the execution was deemed in law to be satisfied. And in 4 Cow. R., 718, an agreement between persons having distinct and separate interests not to bid against each other at a sheriff’s sale, but to divide the profits of the purchase, was ruled to be against public policy, and a fraud upon other persons interested in the sale. (See 13 Johns. R., 112.)
In 1 Story’s Equity, 290, 293, the principle is laid down that where persons agree not to bid against each other'at public auction, the agreement is void. In 2 Stew. R., 175, it was decided that an association formed for the purpose of purchasing lands at the public sales of the lands of the United States and reselling them at a profit by preventing competition is unlawful, as contravening public policy. See Platt v. Oliver et al., 1 McLean R., 295, where the subject is thoroughly examined and the authorities reviewed. (2 Cowp. R., 395; 6 Term R., 642.)
In Hamilton v. Hamilton (2 Rich. Eq., 355) it is laid down as a principle which governs all sales at auction, and especially judicial sales, that there should be full and fair competition. Any agreement or combination, therefore, the object and effect of which is to chill the sale and stifle competition, is illegal, and no party to the agreement or combination can derive benefit from the sale.
This doctrine was illustrated by an elaborate argument, and some of the cases cited above were examined. Reference ivas made to Smith v. Greenlee, 128,) in which the principles are thus condensed : “Á sale at auction ... sale to the best bidder; its object a fair price; its means competition. Any agreement, therefore, to stifle competition is a violation of the principles on which the sale is founded. It not only vitiates the coni ract between the parties so that they can claim nothing from each other, but also any purchase made under it, their claims against the vendor being weaker than those against each other, policy alone forbidding that the last mentioned should be enforced, but both policy and justice uniting to condemn the former. If this be the rule •":th regard to auctions instituted by private individuals, a fortiori should it beastothosepublieanctionsinstitutedby law for groat public purposes, such as executive sales, where the object is to secure the creditor, if possible, the satisfaction of his debt, and at the same time to obtain for the debtor a fair price for his property.” “An agreement not to bid, for the purpose of paralyzing competition, vitiates the sale, so that no party to such agreement can claim any benefit from it. The sale is void at law, aud there is no part of the transaction which should be preserved.”
These authorities will suffice to show that in many cases the rule has been laid down in general terms that an agreement no.t to bid at a public auction is void, as against public policy and tending to fraud, and that no party to such agreement can claim any benefit from it. (See also 3 Cr. R., 242, 247, 248; 4 Wheat. R., 258; 4 Dal. R., 279; 1 Bin., 110; 3 Paig. Ch. R., 154; 3 Madd. R., 66; 3 Mer. R., 468; 5 John. Ch. R., 327; 4 Pet., 184; 3 Brod. & Bingh., 116; 7 Eng. C. L. R., 371.)
But this general rule is not without its exceptions and qualifications, and I will refer to some of the authorities in which the distinctions have been taken and illustrated.
The report of the case of Smith v. Greenlee (2 Dev., 128) is not accessible, but from the review of the decision in Hamilton v. Hamilton, (2 Rich. Eq., 383,) it will he seen that several eases are pht where parties may properly agree not to hid against each other for the property, and to unite in a bid for then joint benefit; as, for iustaucc. where tlie property was too large for either of the several bidders, and no one of them desired to own the entire property exposed for sale. Tlie effect of such an agreement is to advance tlie object *262 which the policy of the law favors — a fair price to the parties interested in the article sold.
In the same case from South Carolina reference is also had to Phippen v. Stickney, (3 Met. R., 385.) where the court, after an examination of the adjudged cases, say “ that they cannot judicially declare that every contract between two or more individuals, in which it may be stipulated that one is to be the purchaser for the joint benefit of himself and another, and that the other is not to interfere with his bidding, shall be hold void, as a violation of the rights of the vendor, and as against public policy, merely because he who seeks to enforce the contract may fiavc been thereby induced to abstain from bidding'. Cases may readily be imagined, and are of frequent occurrence in sales of large magnitude, where two or more do unite and are enabled to become purchasers when neither of them could have otherwise participated in the bidding.” The case itself was one in which one party desired to have one portion of the property, which was to be sold entire, and the other another portion, and the agreement that one should bid for both was supported. And the general rule invalidating agreements not to bid was held to extend only to “ combinations having for their object to stifle fair competition at public auctions, with the design of becoming the purchaser at a price less than the fair value of the property.”
In Goode v. Hawkins (2 Dev. Eq. R., 397) one of the questions was whether an agreement between two that one should bid for the benefit of both at a pnblic auction, and which was not proclaimed at the time of the bidding, was in fraud of public policy. The court say: “ We are not aware of any judicial decision by which such a connection iu a purchase at executiou or other public sale is denounced as a fraud, nor do we find ourselves warranted - inW ence from any established principles in pronouncing so sweeping a «A........Cation. The case of Smith w. Greenlee (2 Dev., 126) contains no adjudication to that extent. So far from it, this court reversed the judgment below and ordered a new trial from the apprehension that the language of the judge’s instruction might have induced the jury to think that all agreements to buy on joint concern at execution sales were unfair.” “If an agreeuiff f'1'one to bid on behalf of himself and others be made to stifle, paralyze, o. ,„s-courage competition, those concerned shall not be permitted lo derive Viinuk from á sale the fairness of which has been thus violated. But persons may legitimately unite In an association by which one shall bid .for the benefit of all concerned, when the motive for such association is not dishonest, nor the object nor the eil'cct of it to produce an improper result. The act does not necessarily imply a dishonest motive, an improper end, or an injurious consequence. If by reason of these the act should be repugnant to fair dealing, then he who objects to it because of such repugnancy must allege and prove the matters which render it liable to be thus impeached.” In Small v. Jones (6 Watts & S. R., 122) it was laid down that there was nothing illegal iu two or more persons agreeing together to purchase property at a sheriff’s sale and fixing a certain price which they are willing to give, and appointing one of their number to be the bidder. (U. S. Dig. Suppt., vol. 1, p. 67.)
Mr. Justice McLean, in the case of Platt v. Oliver et al., (1 McL., 301,) says: “To hold that individuals may not associate together for the purpose of purchasing lands of the United States at a public sale, would he a novel doctrine, and contrary to what lias been generally practised by purchasers, and that under the sanction of the Government, and it bjr no means follows that such associations, when entered into fairly, purchase lands lower than individuals. Congress has guarded against a sacrifice of the. public lands by fixing a limit, below which they shall not be sold, and at which, after the pubUc sale, they may he enlered.”
The principle (hat an agreement not to bid at a public sale is void, as being against, public policy and in fraud of the law, lias, perhaps, been uniformly enforced in Mew York, though some of the eases show the grossest actual fraud in which combinations were formed to purchase a large property *263 at a merely nominal price, and from which, consequently, no parties to such agreement could claim any benefit.
But we liaye seen that tiie general rule has, after full consideration by the enlightened tribunals of other States, been received ouly with certain qualifications and exceptions, and we are now to consider whether the agreement between the parties to this suit comes within the scope of these exceptions.
Is there any circumstance in this transaction which would legitimately authorize the conclusion that the agreement was to chill competition and to purchase the property at less than its fair value?
The great objects of the rules regulating sales at auction, and founded on what is denominated public policy, is to secure to the owner or those interested a fair price for the property, and the means for its accomplishment in fair competition. Now what is fair competition?
The law does not require that all who attend at public auctions should compete for ail or any of the articles exposed to sale. Were this the ease bidders might be subjected to the most ruinous sacrifices to promote the interests of the vendors. They may abstain .from action, if it he their pleasure or conduce to their advantage. Biit should they act they cannot be required to purchase in any other mode or on any other terms than tnay he advantageous to their own interests. They cannot be permitted to enter into combinations to stifle competition with the design of purchasing property at less than its fair value, hut they may unite in any such number as may be necessary to make the purchase advantageous to themselves, provided this junction of interests be without any “dishonest motives” or injurious consequences.
It is difficult to determine from the adjudications what is meant by fair competition; hut it would seem that it may be defined to be such “as arises from the interests of the bidders,” wiihout restraint or check from any fraudulent confederacies. tricks, or artifices to promote that interest at tiie expense and injury of the vendor or others interested in tiie property.
The competition must at least depend entirely upon the interest of the bidders; and while the rights of the vendor are to be guarded, yet the vendees have tiie right to consult aud promote their own interests, but without resort to any fraudulent artifice for that purpose.
The facts set forth in the petition show no fraudulent combination or artifice to stifle fair competition, to the injury of tiie vendor, or to secure the lot at less than its value.
The entire lot was exposed for sale.. The vendor had a right to sell the lot in one body or in as many subdivisions as might be deemed advantageous to her interests, or she could at pleasure have withdrawn the lot from sale altogether. But no sucli option was in the power of the purchasers. Neither of them desired to own tiie whole of the property, but they had not the privilege of each bidding for a separate portion. Their mutual interests and benefit could be promoted only by bidding jointly or by one bidding for their joint benefit, with au agreement for a subsequent division, so as to appropriate to each that portion which was the object of his uniting in tiie purchase or bidding at all.
This agreement was not dishonest in its motive or injurious in its consequence. There was no attempt to stifle competition or defraud the vendor of a fair price. The corporation had guarded against a sacrifice of her lands by fixing a minimum price, below which they could not he sold, aud tiie petition shows that many of the lots were sold at that price. Had the question arisen otherwise than on demurrer, and’had it been shown that (he lots generally sold at rates higher than tiie fixed limit, and tiiat the eilect of this agreement prevented the property from attaining its full price, and this could have been affirmatively proven, tiie transaction would have been repugnant to public policy, and consequently null and void. But as the case is presented the agreement is most clearly within tiie specific qualifications of tile raleas found in the cases of Smith v. Greenlee (2 Dev. R., 121) and Phippen v. Stickney, (3 Met. R., 384.)
Note 92. — Adkins v. Watson, 12 T., 199; Dogget v. Patterson, IS T., 15S; Dawson v. Miller, 21) T., 171; Cross v. Everts, 28 T., 523.
Note 93. — Mead v. Randolph, 8 T,, 191; Miller v. Thatcher, 9 T., 482; McClenny v. Eloyd, 17 T.,15D; Cuneyo. Dupree, 21 T., 211; Leakey v. Gunter, 25 T., 400; Grooms v. Rust, 27 T., 231.
Note 94. — Allen v. Steplianes, 18 T., GoS.
The corporation has been made a party to this suit, but has filed no defense. She does not complain that this agreement resulted to her injury, or that the lands were not sold for their full value, or for the price which otherwise might with certainty have been secured. The corporation is the only party that could in point of fact be injured; and if she had suffered injury there is no imaginable motive for her silence or acquiescence. But she is satisfied, and lias sanctioned the sale by executing- a bond for title on payment of the purchase-money.
There is no statement of facts, and the alleged error in refusing- to grant a new trial cannot be examined. The verdict is not contrary to law, and we must presume it was, in the absence of a statement of facts, sustained by evidence.
The corporation might have objected to the form of the judgment, but she has not complained. It meets the justice of the case, and with that the court is satisfied.
There being no error in the judgment of the court below, it is ordered that the same he affirmed.
Judgment affirmed.