GEORGE M. SALTER v. J. R. GENTRY.

Decided June 11, 1910.

**1.—Purchase of Land—Parol Trust.**

Where G made a trade with S to loan and advance to S the purchase price of a tract of land which was to be sold at public outcry, and S agreed to execute to G his interest bearing notes for said money, and G, as the agent of S, attended the sale and bought the land for S, taking the title in his own name, paying for the same money which he had agreed to loan S, then G took the title in trust for S.

**2.—Same—Evidence.**

The laws of this State do not prohibit the declaration or creation of trusts, or their proof, by parol.

Appeal from the District Court of Navarro County.   Tried below before Hon. H. B. Daviss.

*W. J. McKie* and *El J. Gibson,* for appellant.—In Texas, parol trust may be created in lands, and equity will enforce specific performance. Bailey v. Harris, 19 Texas, 110; James v. Fulcrod, 5 Texas, 512; Anderson v. Powers, 59 Texas, 214; Miller v. Roberts, 18 Texas, 16; Watkins v. Gilkerson, 10 Texas, 340; Evans v. Hardeman, 15 Texas, 480; Stuart v. Baker, 17 Texas, 418; Smock v. Tandy, 28 Texas, 132; Gibbons v. Bell, 45 Texas, 418; Mead v. Randolph, 8 Texas, 198; Miller v. Thatcher, 9 Texas, 483; Leakey v. Gunter, 25 Texas, 403.

It has been held repeatedly that a parol agreement to acquire land together and divide it would be enforced.   Watkins v. Gilkerson, 10 Texas, 340; Gardner v. Rundell, 70 Texas, 453; Arnold v. Attaway, 35 S. W., 483; Reed v. Howard, 71 Texas, 204; Masterson v. Little, 75 Texas, 682; Grant v. Reavis, 34 S. W., 132.

*W. W. Ballew* and *Callicutt & Call,* for appellee.—Where a party does not own land and he agreed to buy it upon the best terms possible and to convey it or an interest in it to another, by a verbal contract, such agreement is within the statute of frauds and can not be enforced directly or collaterally, and it is not error for the court to so instruct the jury.   Edwards v. Norton, 48 Texas, 291; Polk v. Kyser, 53 S. W., 87; Dunphy v. Ryan, 116 U. S., 491; Wallace v. Brown, 10 N. J. Equity, 308; Fowke v. Slaughter, 3 A. K. Marshall (Ky.), 56; Wetmore v. Neuberger, 44 Mich., 362; Spencer v. Lawton, 14 R. I., 494; Nesbitt v. Cavender, 30 S. C., 33; Harrison v. Bailey, 14 S. C., 334; Ostheimer v. Single, 68 Atl., 231; Crawford v. Workman, 61 S. E., 322; Poling v. Williams, 46 S. E., 704; Troll v. Carter, 15 W. Va., 567; Pusey v. Gardner, 21 W. Va., 469; Willis v. Robertson, 96 N. W., 900; Salsbury v. Black, 119 Pa. St., 200; Wood v. Mulock, 48 N. Y., Sup., 70.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellant, plaintiff in the lower court, sued appellee, as defendant, to enforce an alleged parol trust in land arising by virtue of a parol agreement made between the parties whereby it was claimed that appellee was to attend a sheriff's sale of

said land, consisting of about one hundred and sixty-three acres, and as the agent and representative of appellant purchase said land for the use and benefit of appellant, provided, in order to acquire said land, it did not become necessary to bid for same more than $15 per acre. At the time of the sale, and long prior thereto, appellant was in possession of the land and occupied it as a homestead. Appellee attended the sale and the land was struck off to him at exactly $15 per acre. Appellee took the title to same in his own name and, appellant alleges, violated his agreement, which was alleged to be predicated upon a valuable consideration, by refusing to make appellant a deed.

The petition alleged that on the first day of October, 1907, the sheriff of Navarro County, Texas, by virtue of a certain *alias pluries* order of sale, issued out of the District Court of Grimes County, Texas, was to sell at public vendue the land in controversy. That appellant and appellee, on or about the date last aforesaid, agreed that appellee should attend said sale and bid and offer for the land, as agent and special representative of appellant, as much as $15 per acre in cash; that the substance of the trade and agreement was as follows: That appellee obligated himself to bid in and buy said land for appellant, and loan and advance to appellant the purchase price thereof, not to exceed $15 per acre, provided appellant make and execute to appellee notes bearing ten percent interest, payable on or before five years, for the purchase price of the land; that the land had been occupied by appellant for a great number of years as a homestead, and that he desired to continue to occupy the same and acquire the same for homestead purposes. That appellee, at the time, was a man of means, and agreed to buy said land for appellant and to advance and loan to appellant the purchase price thereof, to wit: $2,442, and that appellant agreed to repay appellee the purchase price together with interest thereon at the rate of ten percent per annum from the date of sale; that the moving consideration and inducement to appellant was the acquisition of a homestead; that appellee was anxious to loan money at the rate of interest agreed upon, and that the consideration which moved and prompted appellee to make the trade was the acquisition of interest at the rate of ten percent on the purchase price of the land; that it was agreed that appellant should remain in possession of the land free from rents. That appellee attended the sale on the first Tuesday in October, 1907, and advanced and loaned to appellant the sum of money agreed upon, and bid in the land for appellant at said sale at the price agreed upon, for the sum loaned and advanced, as the agent and representative of appellant, to be held in trust by appellee for appellant subject to the repayment of the purchase price and accrued interest thereon at ten percent. That appellee caused the deed to the property to be made to him, and that soon after the sale and about the time of the confirmation of same, the appellant approached appellee and offered to execute such notes as would properly and fairly express the trade made between the parties, and sought to induce appellee to comply with his contract and agreement; that appellee refused to comply with his agreement, whereupon appellant even offered to pay appellee the purchase price of said land, to wit: $2,442, with interest from date of sale, and demanded that appellee make him a

deed to the premises, which appellee refused to do, and commenced to assert adverse title to the land.

The appellee answered by general and special exceptions (pleading statute of frauds), and general denial, and specially denied the trade made as claimed by appellant. The case was tried before a jury, and the court, at the request of appellee, instructed the jury that appellant had failed to make out such a case by his evidence as would support a verdict, and instructed the jury to find for the appellee. Appellant reserved his exceptions to the charge of the court, and requested certain special instructions, which were refused. The jury returned a verdict for appellee as directed by the court.

*Opinion.* The appellant assigns error as follows: "The court erred in complying with the written request of defendant's counsel to peremptorily instruct the jury to find a verdict for the defendant, for the reason that the testimony of the plaintiff clearly established a parol trust, and clearly revealed an agreement and understanding between the parties that the defendant should advance the purchase price of said land to plaintiff, and should buy in said land for the use and benefit of plaintiff, and in its entirety clearly established plaintiff's case."

Salter, the appellant, testified: "After the second sale, I had a conversation with Gentry with reference to this tract of land. I was again pursuing the matter of buying the land. We had several conversations along that line about buying the land at private sale at the rate of $15 per acre. Mr. Gentry, after the second sale, came down and looked at the land and said it was well worth that much money and that he would, if necessary, advance the full amount. He didn't care whether I paid him down or not; that he had $8,000 in the bank he would like to get out on good land notes at ten percent, but he wouldn't let this money out for less than ten percent, and I agreed to give him ten percent in order to get the money. He was pleased with the land and said he would let me have the money, the interest was what he wanted. Between the second and third sales Mr. Gentry and I discussed the idea of buying it at private sale, but that fell through. When he told me that he would let me have the money, I told him the money was what I wanted. I wanted to stay on the place; it had to be sold and I would have to buy it if I wanted to stay on it. It was a good locality and handy to the church and school and most of my wife's people are down in there. He was pleased with the land and was willing to advance $15 an acre on it, and I wouldn't have to pay any interest until I got the deed. After that conversation he got in here after Owens and wanted to buy the land from Owens for me, he said. This was R. R. Owens, the lawyer here for the Pool heirs in whose hands, I understand, they had put the land for sale at private sale. I saw in the paper that the land was to be sold at public sale awhile before it was sold. The morning of the sale, Gentry wanted me to let him do the bidding at $16 per acre. I told him I wouldn't give $16 for it; if it got over $15 I would get out of Uncle George Kent's way and let him buy it. He tried to get me to go up to $16 and I refused to, and told him he had better let me do the bidding, and run it up to $15 and then drop out if it went higher. He came to me again the same morning and wanted me to let him run it to $16. I

told him when it got over $15 I was out. So he came to me the third time that morning and said he had got a letter, or Owens had, from W. W. Meacham, attorney for the Pool heirs, and that Meacham told Owens to make the land bring $15 per acre if he could, and he would approve the sale, and that he had made a trade with Owens, guaranteeing him a bid of $15 per acre, and Owens was to guarantee him the sale, and wanted him and Owens to bid on the land, and it would be for me; so I told him to go ahead and buy it in, that I was willing and that I wanted the land at $15 per acre. That last conversation was somewhere near dinner time; 11 o'clock, I expect. I told Gentry that if it went over $15 that I would step aside and let Mr. G. H. Kent, Uncle George, buy it. Gentry went on and said that I needed the land, that Kent didn't need any land, he had plenty; that I needed it for a home, and that he wanted to give $15 an acre for it, or something like that. I don't .think he said anything to me with reference to Kent's bidding on the land. I was not to do anything after the sale until I got the deed. He was to make it over to me and I was to give my note, with ten percent interest for five years; and that evening, after I started home, he was standing in the door of a negro saloon back of Ransom's house, and told me the land was mine, just to go ahead and do whatever I wanted to. I was in my buggy going home. I don't think the sale was approved until November, and he talked to me nearly every time I come to town about the business. I was to give him land notes for five years at ten percent. I could fix up the notes to suit myself at the time the deed was made to me. I reckon it was somewhere about Christmas time when I first learned that Gentry had repudiated the trade."

The evidence shows there had been two prior sales of the land, neither of which had been confirmed. The appellant says: "I got acquainted with him (appellee) a short time before the second sale of this land which was in the spring of 1907. Mr. Gentry and I both attended the second sale. The land was bid in at that time but the sale was set aside." Appellant then states: "I was again pursuing the matter of buying the land," and the substance of his testimony reveals that soon after the second sale he made the trade with appellee to act as the agent of appellant and loan and advance to appellant the purchase price, provided the land did not sell for more than $15 per acre. Whereupon appellant was to execute to appellee notes bearing ten percent interest, payable within five years. It was shown that the land sold for exactly $15 per acre. All parties interested in the sale knew that the guardian of the owners of the land would approve a sale at that price.

If appellee Gentry, as the evidence tends to show, made a trade with appellant Salter to loan and advance Salter the purchase price of the land, provided it did not sell for more than $15 per acre, for which Salter was to execute to Gentry his notes payable within five years bearing ten percent per annum interest, and Gentry as agent of appellant attended the sale and bought the land for appellant, taking the title in his own name, paying for the same money which he had agreed to loan Salter, then he took the title in trust for appellant. Bailey v. Harris, 19 Texas, 110; Gardner v. Randell, 70 Texas, 453.

Vol. LXI Civil—34.

In the case first cited, one Theodore Dorsett, conveyed to one, Bailey, 67 acres of land for $100.50. L. P. Harris, plaintiff in that case, had made a contract with said Dorsett for the land, and Bailey, to whom the land was deeded, had furnished or loaned the money to Harris to pay for the land, and took the deed in his, Bailey's, name with the consent of Harris, and it was then and there agreed by and between them that Harris was to have five years to repay the money, by paying ten percent interest thereon, at any time he, Harris, might elect to do so and take the land. Harris tendered Bailey the amount of the loan and interest advanced by Bailey, which he refused to accept. Harris sued Bailey and recovered the land. The court, in the opinion, says: "But it is immaterial whether the facts be such as, by implication or construction of law, would raise a resulting trust. The laws of this State do not prohibit the declaration or creation of trusts, or their proof, by parol. They do not restrict the creation of parol trusts (as do the laws of England and most of the other States) to such as arise only by implication or construction of law. If the arrangement between the parties in relation to this land clearly created a trust between the parties to this suit, it will be enforced although it be by parol, and whether it be or not, in a technical sense, a resulting trust. James v. Fulcrod, 5 Texas, 512.

"The transaction is in the nature of a mortgage, and certainly has as much equity, and is as much entitled to the aid of the law, as mortgages created by the mere deposit of title deeds. 2 Story Eq., sec. 1250. The statute of frauds, requiring contracts for the sale of lands to be in writing, was designed to suppress frauds; but if allowed to extend to cases such as the present, which in fact it does not reach, the result would be the encouragement and support, and not the suppression, of fraud. The facts show clearly that there was a valid and legal trust between the parties; and the judgment decreeing, in effect, the execution of the trust, is affirmed."

In the instant case if the money paid by Gentry for the land was money loaned by him to Salter for that purpose and he took the deed in his own name, then a resulting trust was thereby created in favor of appellant. Again, if the arrangement between the parties with reference to the land and the loan of money for its payment clearly created a trust in the land, the same will be enforced although it be in parol. Appellee Gentry attended the sale and bought the land at $15 per acre as the agent of Salter. George Kent, a neighbor of appellant Salter, living about one mile from him, came to town the day of the sale and met appellee Gentry and had a conversation with him before the sale and between one and two o'clock of that day. Gentry stated to Kent that he understood Owens was going to bid on the land. The witness replied that if everybody was going to bid he wanted to know it. If it was to be bought for speculation he wanted it himself. Gentry replied it didn't make any difference if he or Owens bid it in, *Salter was to get it.* After the purchase, and as appellant was returning from the sale to his home, appellee Gentry met him and told him the land *was his and go ahead and do whatever he wanted to.* The appellant was then living on the land.

The evidence was sufficient to require the submission of the case to

the jury. The evidence showed that appellant Salter offered to execute the notes and take the land at the agreed price, and Gentry refused.

We sustain appellant's assignment of error that the trial court erred in instructing a verdict for defendant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*