**STRICKLAND et al. v. STRICKLAND.**
(No. 11244.)

(Court of Civil Appeals of Texas. Fort Worth.
June 6, 1924. Rehearing Denied
Oct. 10, 1925.)

1. **Divorce ⚮93(3)—Allegations of ill treatment of wife held sufficient to justify divorce.**

Allegations of husband's periodical drunkenness, abuse, and violence in wife's petition for divorce *held* sufficient, if proven, to justify divorce.

2. **Frauds, statute of ⚮138(2)—Wife's suit against husband's father for community funds paid on purchase price of land held not barred by statute, though defendant's promise to convey was oral.**

Wife's suit against husband's father for half of community funds paid him on purchase price of land *held* not suit for specific performance of contract to convey realty, which she alleged that defendant had repudiated, but suit in nature of one for money had and received, which was not barred by the statute, though defendant's promise to convey was oral.

3. **Trusts ⚮17, 18(3)—Verbal agreement creating trust in lands not in violation of statute.**

Agreement creating trust in lands is not in violation of statute, though verbal.

4. **Evidence ⚮155(10) — Admission of plaintiff's testimony as to prior statement by one whom defendant sought to show that plaintiff sought to have testify falsely held not reversible error.**

In wife's suit for divorce, where defendant's counsel sought to show by plaintiff that she attempted to get friend to testify falsely for her, and entire conversation, including her statement to such friend that latter was "talking different" than she had on prior occasion, was admitted, admission of plaintiff's testimony as to what such friend had told her on such prior occasion was not reversible error, though hearsay and conclusion.

5. **Divorce ⚮286—Admission of wife's testimony as to friend's statement concerning husband's treatment of her held not ground for reversal of money judgment against father-in-law.**

In wife's suit for divorce and half of community funds paid to her father-in-law on purchase price of land, error in admission of wife's testimony that one whom defendant's counsel sought to show that she attempted to have testify falsely for her as to grounds of divorce had said on prior occasion that way husband treated her was awful, *held* not ground for reversal of that part of decree which adjudged lien on land in question for money awarded wife.

6. **Appeal and error ⚮1002—Whether amounts which wife testified were paid to father-in-law from community estate were paid held for jury on conflicting evidence.**

Whether amounts which wife testified were paid by herself and husband to latter's father under contract to purchase land, or any part of purchase price, were ever paid to him *held* fact

question for jury, whose finding on conflicting evidence in wife's action for half of community funds so paid him will not be disturbed.

7. **Divorce ⚮287 — Judgment awarding wife entire amount of community funds paid father-in-law on purchase price of land reformed by agreement of parties and affirmed for half of such amount.**

Though court, after granting divorce to wife, may award her and minor children the use of husband's separate estate for their support, judgment awarding her entire amount of community funds paid to her father-in-law on purchase price of land will be reformed and affirmed for half of such amount where she agreed to, and requested, such reformation.

Appeal from District Court, Clay County; Paul Donald, Judge.

Suit for divorce by Mrs. Maggie Strickland against R. P. Strickland, in which J. H. Strickland was joined as party defendant. Judgment for plaintiff, and defendants appeal. Affirmed as reformed.

Taylor & Taylor and H. M. Muse, all of Wichita Falls, for appellants.

H. P. Shead, of Fort Worth, and R. Loftin, of Henrietta, for appellee.

BUCK, J. [1] Mrs. Maggie Strickland, residing in Clay county, sued her husband, R. P. Strickland, also residing in Clay county, for divorce, and for a division of certain property alleged to belong to the community estate. She alleged that defendant was a drinker of intoxicating liquors, and had a habit of getting drunk once or twice a month, and, when in a drunken condition, he would curse and abuse plaintiff and his children; that he was a man of violent temper, and would get mad, and when in such condition he would curse and abuse plaintiff and offer her violence. The allegations of defendant's alleged ill treatment of plaintiff are sufficient, if proven, to justify a judgment of divorce. She alleged that three children were born of the marriage, the oldest, a girl named Esther, about 13 years of age; a boy named Hugh, about 10 years of age; and a boy named Lee, about 5 years of age.

She further alleged that she had been married to defendant since September, 1909, and that during their married life they had accumulated personal property consisting of 15 head of mules, of the value of $100 each; four mares and their colts, worth $100 each; 30 head of cattle, valued at $15 per head; 11 head of hogs, chickens, turkeys, guineas; 200 bushels of corn; 500 bushels of oats, etc.

She further alleged that she and her husband had an agreement with the latter's father, J. H. Strickland, by which said J. H. Strickland agreed to loan to his son and wife sufficient money to make the down payment on 298 acres of land, known as the Hoff place,

situated about 5½ miles southeast of Henrietta, Clay county. She alleged that at the time this agreement was had she and her husband were living in Oklahoma, and that they owned 160 acres of land in that state; that pursuant to this agreement the plaintiff and her husband moved from Oklahoma in 1918 to the land purchased in Clay county, and occupied it as a homestead; that it was agreed between plaintiff and her husband on the one hand and J. H. Strickland on the other that, when the money loaned by the father-in-law had been paid by the husband and plaintiff, the deed to the land should be made to the plaintiff and her husband. She further alleged that to her certain knowledge one note in the sum of $2,070 and one note in the sum of more than $1,000, and various other sums at different times, had been paid out of the community estate to defendant Strickland; and that she believed that all of the purchase money had been paid to him by plaintiff and her husband, but that said defendant had not transferred the title to the land to his son and his wife. She further alleged that she left her husband in December, 1923, by reason of his cruel treatment, which rendered their living together unsupportable, and moved to Fort Worth, Tarrant county, where she lived with and near her mother.

The defendant R. P. Strickland, the husband, answered by a general demurrer and a general denial, and especially denied that he had paid any part of the purchase price on the Clay county land. He alleged that he had been renting said premises from his father, and cultivating and enjoying the same as a tenant only; that the defendant's father had paid in full the purchase price due for the land, but that he borrowed the money to pay the same, and at the time of the filing of the answer he owed something like $10,000 on this land, together with about 160 acres additional purchased at the same time from the said Hoff. He specially pleaded that he did not own any title, interest, or equity in said land.

The defendant J. H. Strickland also filed his answer, consisting of a general demurrer and a general denial, and an adoption of the answer of R. P. Strickland with reference to the plaintiff's claim of equity in the Clay county land.

The trial was had before a jury, and the jury found: (1) That the defendant, R. P. Strickland, had been guilty of cruel treatment and outrages to the extent of making their further living together unsupportable; (2) that the mother was the proper person to have the care, control, and custody of the children; (3) that the plaintiff and defendant R. P. Strickland had paid out of their community funds to J. H. Strickland, upon the Hoff place, $6,000, and that J. H. Strickland received the benefit thereof; (4) that plain-

tiff was entitled to receive as attorney's fees the sum of $300.

Upon this verdict the court entered a judgment for plaintiff, dissolving the bonds of matrimony theretofore existing between her and R. P. Strickland, and giving the care, custody, and control of the minor children to the plaintiff; and further awarding to plaintiff the sum of $3,000, one-half of the $6,000 paid out of the community fund of plaintiff and defendant R. P. Strickland on the Hoff place, and fixing a lien upon said Hoff place to secure the payment. Judgment also was rendered for $300 against R. P. Strickland as attorney's fee. From this judgment the defendants have appealed.

Fundamental error is urged of the court's failure to sustain defendants' general demurrer in so far as the suit concerning the land in Clay county is concerned, and in admitting any testimony or submitting any issues to the jury concerning the same, and especially is it urged that the general demurrer of J. H. Strickland should have been sustained.

[2] It is urged that plaintiff failed to allege that J. H. Strickland promised in writing to convey the land in question, but the allegations on their face show that said promise, if any, was oral, and therefore a suit to enforce the same is barred by the statute of frauds; and "for the further reason that it did not plead there was any payment made to the said J. H. Strickland, which is necessary to create a resulting trust."

[3] In so far as plaintiff's suit against J. H. Strickland is concerned, it was in the nature of one to recover money had and received, and was in no wise a suit to specifically perform or enforce a contract to convey real estate. Plaintiff merely sought to recover her one-half of the cash paid out of the community estate of herself and husband to J. H. Strickland on the land, under the agreement to convey to her and her husband said land when the purchase price had been paid. Plaintiff alleged, in effect, that J. H. Strickland had repudiated said agreement, and had refused to convey said land or to admit that plaintiff and her husband had any interest therein. An agreement, though verbal, creating a trust in lands is not in violation of the statute of frauds. James v. Fulcord, 5 Tex. 512, 55 Am. Dec. 743; Miller v. Thatcher, 9 Tex. 484, 60 Am. Dec. 173; Bailey v. Harris, 19 Tex. 110; Leakey v. Gunter, 25 Tex. 403; Barnett v. Vincent, 69 Tex. 687, 7 S. W. 526; 5 Am. St. Rep. 98; Brotherton v. Weathersby, 73 Tex. 473, 11 S. W. 505; and numerous other decisions.

[4] While plaintiff was testifying, and on cross-examination, she was asked if she knew Mrs. Lerner, and she said she did, and that she was at the home of Mrs. Lerner a short time on the Sunday evening before; that she and her mother and brother-in-law and

her children went out there. The following questions were asked and answered:

"Q. Isn't it a fact you said to Mr. and Mrs. Lerner, 'Here's what we want you to testify,' and then you told them what you wanted them to testify to? A. No. sir.

"Q. Didn't you tell them what you wanted them to swear to, and didn't you tell them you had them where they had to swear to it? A. No, sir; that is not so. I do admit that we went out there and talked to them, but did not talk to them about what I wanted them to testify to. I just went out to see them for a while. I hadn't seen them for a good while. Mrs. Lerner mentioned it first. We didn't go particularly for that, but I wanted to see them, and to talk to them about that too.

"Q. That is what I asked you. Isn't it a fact you said to Mr. and Mrs. Lerner, 'Here's what you want to testify,' and then you told them what you wanted them to testify to? A. No, sir; it is true that Mrs. Lerner told me that her testimony wouldn't do me any good; that it would be against me. While we were there I told her I wanted her as my witness, and she said her testimony would be against me, and I told her she was talking different now to what she had. She was talking to me, by ourselves; there was never any outsiders there at that time."

Then follows numerous questions about where the witness and Mrs. Lerner were when the conversation took place, how long the witness stayed at the Lerner home, etc., and then the following questions were asked and answered:

"Q. When she told you her testimony would be against you, where were you? A. We went out in the yard and looked at the chickens and turkeys, that is, Mrs. Lerner and me and my mother, but it was in the house that Mrs. Lerner said her testimony would be against me. She told me that before I asked her to be a witness for me, and, after she told me her testimony would be against me, I told her she talked different from what she did last year.

"Q. Who heard you say that? A. My mother and Mrs. Stockland.

"Q. Isn't it a fact you thought Mrs. Lerner would testify she was down there in your home several times and she saw you tying up bruises? A. I talked to her about him.

"Q. Didn't you tell her those words I asked you? A. I didn't. I says, 'Would you want your children living with him, with a man like that,' and she said, 'No.'

"Q. Answer my question. Isn't it a fact you told Mrs. Lerner there that evening you wanted her to come and testify she had been in your home and saw you tying up bruises on the children? A. No, sir; I did not."

Thereupon the plaintiff was asked by her counsel:

"About this Lerner proposition, Mrs. Strickland, what was it Mrs. Lerner told you last year about this case, in fact, it came out what her testimony would be?"

Objection was made to this question on the ground that the answer would be hearsay. The plaintiff's counsel contended that the defendant had brought out the conversation at the Lerner home on the Sunday before, and had brought out the claimed fact that Mrs. Lerner on a prior occasion had talked differently as to her attitude, and as to what her testimony would be from the way she talked on the last occasion. The witness proceeded to tell what the nature of the conversation had been on a previous occasion, in July before, and that Mrs. Lerner and her youngest son took the mother of the witness to the home of the sister of the witness, etc. And here counsel stated that he was not asking the witness to detail anything except what the testimony was, and the court ruled that he would permit the witness to tell what Mrs. Lerner told her last fall. Then the witness answered:

"She said it was awful the way Mr. Strickland had treated you and your mother."

Exception was made to this answer on the ground that it was a conclusion of Mrs. Lerner's, and would not be admissible if she in fact were present and testifying. The court said:

"I will permit this witness here to state the facts and let the jury decide the facts."

We find no reversible error here shown. Counsel for defendants was trying to show an improper motive on the part of the witness in going to the Lerner home and attempting to get her to testify for the plaintiff in the coming trial. It was brought out in a cross-examination that the witness said to Mrs. Lerner that she was "talking different" from what she did last year.

[5] In view of the evident purpose of the defendants' counsel to cause the jury to believe that the plaintiff had gone out to the Lerner home to get Mrs. Lerner to testify falsely for the plaintiff, and in view of the fact that the testimony as to the conversation then occurring between the plaintiff and Mrs. Lerner was all admitted, including the statement above referred to that Mrs. Lerner was "talking different" from what she had prior thereto, we think that the testimony objected to was admissible. If not, it could only have effect on that part of the judgment with which defendant J. H. Strickland has no concern. In the propositions advanced, urging error in the trial court, no complaint is made of that portion of the judgment granting the plaintiff a divorce; but apparently the only concern is as to the money judgment, and the lien fixed on the land to secure the same. We do not think any possible error in the admission of this testimony could reasonably have affected the jury's finding as to the money recovered and the fixing of the lien.

[6] In the fifth and last proposition complaint is made of the amount of the judgment against defendants. The contention is urged that the testimony, after giving full weight thereto, does not show that more than $3,000

was paid by defendant R. P. Strickland out of the community funds of himself and wife to his father, J H. Strickland, on the purchase price of the land in Clay county; that, inasmuch as the plaintiff could not recover more than one-half of such community estate, the judgment should be for $1,500 rather than $3,000. While the appellant does not state his question as we have stated it, but merely contents himself with the statement that the verdict and judgment of the court is not sustained for the amount of $6,000, and that said judgment is excessive in the amount of $3,000, we have concluded, in the interest of fairness, to treat the question raised as stated by us.

The plaintiff testified that she and her husband sold the Oklahoma property in 1920 for $3,500 cash; that it was agreed between her and her husband on the one hand and J. H. Strickland on the other that, when the Oklahoma property was sold, the amount received therefor should be paid to J. H. Strickland; that she did not know what the $3,500 was used for by her husband. She testified:

"I do not know at the time how much was paid by my husband and I on the Hoff place, but I do know we paid a note in 1919 for $2,070, which was paid to Mr. John Hoff. We paid the note, which note was paid out of the money from the farm. The Hoff place contains 298 acres. As I have stated, there was $2,070 paid by myself and husband on the Hoff place. I know that there was a note paid off about September, 1922. It was a little over $1,000 that was paid. The money that paid that note was the money, I suppose, from the farm."

[7] While R. P. Strickland and J. H. Strickland denied the payment of the $2,070, and the second payment of more than $1,000 to J. H. Strickland, and testified that no part of the purchase price of the Clay county land was ever paid to J. H. Strickland, yet we believe that this was a question of fact to be decided by the jury, and we are not prepared to disturb the finding of the jury as to the $3,000 alleged to have been paid on the land. Appellee admits that the plaintiff was entitled to recover only one-half of said amount, and asks that the judgment be reformed and affirmed for $1,500 instead of $3,000, at the same time affirming the judgment as to the divorce granted and the awarding to plaintiff the care, custody, and control of the three minor children, and awarding to plaintiff judgment for $300 for attorney's fee. Therefore the judgment will be so reformed, and as reformed will be affirmed. However, the Supreme Court, in the case of Hedtke v. Hedtke, 112 Tex. 404, 248 S. W. 21, held that a husband's income from his separate property is burdened with the duty to maintain his wife and children, and that the court is empowered, in a divorce proceeding, after granting the divorce, to award the wife and minor children the use of the separate estate of the husband, for the support of such wife, or former wife, and the minor children. Under this rule it would seem that the entire community estate could have been awarded to plaintiff for the support of herself and children. But, inasmuch as the appellee has agreed to the reformation before stated, we have granted such reformation of the judgment. As so reformed, the judgment will be affirmed, with costs of appeal taxed against appellee.