T. J. PRIMM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. J. PRIMM, TEMPORARY ADMINISTRATOR OF THE ESTATE OF MATTIE PRIMM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37792, 37793. Promulgated May 4, 1933.

*Benjamin H. Saunders, Esq.,* and *A. C. Upleger, C.P.A.,* for the petitioners.

*Shelby S. Faulkner, Esq.,* for the respondent.

14

16

OPINION.

SMITH: The only question for decision in these proceedings is whether the petitioner and Mattie Primm, constituting a marital community in the taxable year, are liable to income tax upon the net profits of the cotton-trading account, amounting to $127,838.34, of which amount $17,548.33 was returned as taxable income by the marital community. The respondent contends that the evidence of record does not warrant a finding that the income of the trading account was the income of a trust. It is to be noted that the respondent makes no claim against T. J. Primm as a fiduciary.

The issue, then, is whether T. J. Primm intended to and did actually create a valid trust with respect to the cotton-trading account. The existence or nonexistence of the alleged trust must be determined by the laws of the State of Texas. The rule as stated in *Houser* v. *Jordan*, 26 Tex.Cv.A. 398; 63 S.W. 1049, is:

* * * Our statute of frauds does not apply to trusts arising directly from an express contract, nor to implied or constructive trusts, and the contract by which an express trust is created, or the facts from which an implied trust will result, may alike be proven by parol. *James* v. *Fulcrod*, 5 Tex. 512, 55 Am. Dec. 743; *Miller* v. *Thatcher*, 9 Tex. 482, 60 Am. Dec. 172; *Brotherton* v. *Weathersby*, 73 Tex. 473, 11 S.W. 505.

In section 99 of Perry on Trusts, it is said that:

Whether the trust is perfectly created or not, is a question of fact in each case; and the court, in determining the fact, will give effect to the situation of the property, and the purposes or objects which the settlor had in view in making the disposition.

When shown the instrument dated November 24, 1923, and asked when the alleged trust was created, T. J. Primm testified that:

It was created the latter part of 1922, we discussed that when my children were gathered at home at Christmas, and from then on, about January 1, 1923, we considered it a trust, and so acted.

He further testified as follows:

I was going to try the cotton market, and if I made any money I wanted them to be the beneficiaries, and they wanted me to handle it as I thought best, and I proceeded to do so.

\* \* \* \* \* \* \*

I said I was going to play the cotton market and wanted them to have the benefit of the money made.

\* \* \* \* \* \* \*

It came up this way. Usually I would give the children what I made during the year. This conversation came up, and my son, J. F. Primm, who is here now, he was one of the children living in El Paso, and in the conversation he said he would not let me give him anything. He said: "I don't want it. You give it to the balance of the children. I have plenty. I don't need it." He would not take anything. It came up at the gathering Christmas.

Primm continued his operations in the cotton-trading account and toward the end of 1923 he said he "finally sold out and found I had made some money." The profit from dealing in cotton through the brokerage account with Hayward & Sons resulted from Primm's efforts. With the exception of a check for $50,000 which was deposited in a savings account, all of the money made in the brokerage account was handled by Primm through his individual bank account. He gave to his children as their needs required—some receiving more than others. Approximately $10,000 of the earnings from the brokerage account was used by Primm in purchasing land. With respect to this purchase Primm testified as follows:

A. I bought an undivided half interest in 400 acres of land from Mr. Higginbotham.

\* \* \* \* \* \* \*

Q. This land was taken in your own name?

A. This was in my own name.

\* \* \* \* \* \* \*

Mr. Upleger. That check for $10,538.33 was on your own personal account and for your own personal benefit?

Mr. Primm. Yes.

The venture in the automobile finance business absorbed the earnings that were not distributed to the children or used by Primm.

Several of the children, beneficiaries of the alleged trust, testified with respect to the conversation at Christmas 1922. From their testimony it appears that they considered that they were to receive the benefit of any profits that their father made through the brokerage account, and that he would stand any losses that might be incurred.

The discussion at Christmas 1922, was consistent with Primm's custom of making gifts to members of his family. The earnings of the trading account were distributed by Primm as he saw fit, and not equally among the designated beneficiaries. A large portion of these earnings went for the purchase of land (title to which was taken by Primm) and for the automobile finance company (of which Mrs. Primm and the children may or may not have been the stockholders). Then, too, the written instrument which was prompted by the accumulation of profits merely provides for the division of "the income of this fund." Although Primm's trading account was

transferred from himself as an individual to himself as a trustee upon the books of the broker, there was no transfer of an interest in the $2,327.50 (the property producing the income) to the beneficiaries. In *Hazel T. Power*, 23 B.T.A. 428, 431, we said:

The rule is well established that notwithstanding the document of grant or assignment itself may be perfectly valid and enforceable between the parties thereto, the liability for income tax upon future income or profits which will or may accrue to the assignor by reason of the ownership of or an interest in property can not be avoided by the assignor or grantor through the grant or assignment of such income or profits to another. * * *

It appears that the designated beneficiaries each received in November 1923, a distribution of $2,500, although at the time of that distribution there was a considerable profit in the account and Primm said he wanted "to let each child have what was his."

The earnings which the respondent has taxed to the marital community resulted from Primm's trading activities. He realized the profits and distributed or used them as he saw fit. His disposition of the profits indicates that they were subject to his "unfettered command," and the evidence refutes the contention that the income was the income of a trust. The fact that the designated beneficiaries reported and paid a tax upon such profits does not relieve these taxpayers of their liability for tax upon income that belonged to the marital community. The respondent's determination is sustained. Cf. *A. M. Ellis*, 25 B.T.A. 1195; *Corliss* v. *Bowers*, 281 U.S. 376.

Reviewed by the Board.

*Judgment will be entered for the respondent.*