S. H. WATSON v. R. C. BOSWELL ET AL.

Decided February 13, 1901.

**1.—Landlord and Tenant—Stipulation Against Damages for Illegal Distraint.**

A stipulation in a lease exempting the landlord from liability for damages resulting from any future distraint is void as being against public policy in depriving the courts of the power to redress wrongs done to the tenant.

**2.—Same—Distress Warrant—Damages.**

Where the landlord establishes any one of the statutory grounds upon which the distress warrant is sued out, his failure to establish the others does not subject him to liability in damages to the tenant.

3.—Same—Damages Where Part of Debt Not Due.

Where the proof showed that a part of the debt alleged to be due by the landlord in his application for the distress warrant was in fact due and a part was not due, the tenant was not entitled to damages because the entire crop was distrained, since the landlord was entitled to levy upon all the property covered by his lien, but only to such damages as he actually sustained by reason of the wrongful averment in the application of a greater amount due than was actually due at that time. Following McKee v. Sims, 92 Texas, 51.

4.—Evidence—Self-Serving Letter Suggesting Settlement.

A letter by defendant's attorney to plaintiff, to the effect that defendant was ready to consider any reasonable proposition of settlement plaintiff might submit, is not admissible in evidence.

5.—Same—Parol Varying Writing—Consideration of Note.

Parol evidence is admissible to show that a note was without consideration, since this does not change or vary the written contract.

6.—Same—Answer in Another Suit as Corroboration.

Where defendant testified that he paid certain money to W. for plaintiff, as a payment on the note sued on, he could corroborate this by putting in evidence an answer filed by plaintiff in an action against him by W., stating that defendant had paid such money to W. for plaintiff.

7.—Same—Evidence to Show a Mortgage.

A bill of sale absolute on its face may be proven a mortgage by parol evidence showing that it was intended merely as a security for a debt.

8.—Same—Illegal Distress Warrant—Exemplary Damages.

Where exemplary damages are sought for an illegal distraint by the landlord, the tenant may, as bearing on that matter, give evidence of loss of time by himself and family, as a result of the seizure of his crop.

9.—Landlord and Tenant—Distress Warrant—Damages.

Where a distress warrant is wrongfully sued out the value of time spent, and expenses incurred, by the tenant in regaining possession of his property by replevying it, is a proper element of damage.

10.—Evidence Held Secondary—Books of Account.

Testimony that certain books of account show a certain indebtedness is secondary evidence and not admissible.

11.—Chattel Mortgage—Live Stock.

A duly recorded chattel mortgage upon all live stock owned by the maker is superior to a chattel mortgage subsequently given by him upon two certain mules that he owned at the date of the first mortgage.

12.—Costs—Amendment.

Where an amendment merely omitted a part of the amount claimed in the original petition, the trial court went beyond sound judicial discretion in taxing against the party all costs up to that time.

Appeal from the County Court of Ellis. Tried below before Hon. J. E. Lancaster.

*C. M. Supple,* for appellant.

*Templeton & Harding,* for appellees.

NEILL, Associate Justice.—The appellant, Watson, claiming certain indebtedness accruing to him from the appellee, Boswell, growing out of the relation of landlord and tenant existing between the parties, caused the issuance and levy of distress warrants upon the property of

the latter upon which the former claimed a landlord's lien to secure such indebtedness. After the writs, which emanated from the justice court, were levied and the property distrained and it was replevied by Boswell, and the papers in the distress proceedings were filed in the office of the county clerk, Watson filed suit in the county court against Boswell to recover the alleged indebtedness and to foreclose certain alleged mortgage liens on some of the property, as well as his alleged landlord's lien on all, setting up, also, the issuance of the distress warrants, the seizure of the property by virtue thereof, its replevy by the defendant, and asked judgment on the replevy bond against the principal and the sureties thereon.

The defendant plead failure of consideration of one of the notes, evidencing a part of the indebtedness; that one of the mortgages alleged by plaintiff to have been made by him to secure a part of the latter's demand was a forgery; matters in offset; and, in reconvention, actual and exemplary damages for wrongfully and maliciously suing out the distress warrants.

D. W. Oppenheimer and A. E. Kiersky, sureties on Boswell's replevy bonds, answered denying any liability. Kiersky then by answer, in the nature of a plea in intervention, averred that he had a superior mortgage lien to the liens claimed by plaintiff on two certain gray horse mules and on the crop of cotton and corn grown by Boswell to secure him in an indebtedness in the sum of $173, for which sum he asked judgment, together with a foreclosure of his alleged mortgage.

The case was tried before a jury who found a verdict in favor of Boswell on his counterclaims and plea in reconvention against the plaintiff for $585.78, and in favor of the latter against Boswell for $526.71. They then found the difference between plaintiff and defendant to be $59.24, in favor of the latter, less $20.75 with 6 per cent interest from May 29, 1899. The jury also rendered a verdict in favor of Kiersky on his plea in intervention and for a foreclosure of his alleged mortgage lien as against both plaintiff and defendant.

From the judgment rendered on the verdict against him Watson has appealed, and has assigned errors which relate both to the judgment in favor of Boswell and to the one in favor of Kiersky.

*Opinion.*—1. The contract between Watson and Boswell which established their relation as landlord and tenant provided that in the event the former should institute suit for distraint against the latter, he should be free from all damages to appellees' crops, from whatever cause claimed, or from any personal liability arising therefrom in any wise whatsoever. In view of this provision of the contract, the appellant asked the court to instruct the jury that appellee could not recover either the actual or exemplary damages sued for. The court's refusal to give such instruction is assigned as error. In order for a party to obtain rightfully the issuance of a warrant in this State to distrain the property of another, certain facts must exist, which the statute requires

the party applying for such process to verify by his affidavit. If the facts exist and are verified in this manner, however much the party against whom it issued may have been damaged by the distraint of his property, he can not recover either actual or vindictive damages. But if the facts which authorize the issuance of this extraordinary and ofttimes harsh process do not exist, the party, to obtain a distress warrant, must necessarily swear falsely, and in procuring the writ by this means, violates the law and renders himself liable for actual and vindictive damages, as well as to a criminal prosecution. So it is seen the clause in the contract upon which the refused charge is predicated, as far as the agreement between the parties can, authorizes the wrongful issuance and abuse of judicial process, and exempts the party guilty of such wrong from such damages to the injured party as flow from such abuse, thus closing the courts of justice to the oppressed and granting immunity to the oppressor. The superior condition of the landholder to the tenant class gives the former such an advantage in making rental contracts that it is against public policy to allow the former to use such advantage by inserting such a provision in a contract of lease as authorizes oppression through process of the law, and, if enforced, renders the courts powerless to redress the wrongs flowing from such oppression. We think, therefore, that clause of the contract is void as against public policy. Loftus v. Maxey, 73 Texas, 242; Gillett v. Moody, 54 S. W. Rep., 35.

2. There are several statutory grounds for the issuance of a distress warrant. When more than one is properly alleged in the application for the writ, its procurement does not subject the applicant to an action for damages, if one of the grounds is established upon the trial, though the proof may fail to show the existence of the others. The grounds averred in this case were, (1) that a certain amount of the debt sued for was due and unpaid; (2) that the appellee had removed from the rented premises a portion of the agricultural products raised thereon during the year 1899, and (3) that he was about to remove from said premises other products raised thereon during said year. The first and third, if the amount sued for is for rent, are statutory grounds. The second is not. Rev. Stats., art. 3240. The court, in its charge upon the issue of damages, in effect instructed the jury that if some of the amount of the debt averred in the application to be due was not a subsisting indebtedness, the writ was, as to so much of the alleged debt as did not subsist, wrongfully sued out, and its wrongful issuance, on that account, would render the appellant liable for damages. This part of the charge is complained of as error for the reason that it, in effect, excluded from the jury the consideration of the other grounds alleged in the application for the writ, and authorized a verdict against appellant on the issue of damages, although the evidence shows the existence of both or one of the other grounds. There was evidence tending to prove that the third ground stated in the application was true. If, as we have said, it existed when the warrant was issued, such issuance

was not wrongful nor unlawful, and no liability would be incurred by
appellant. We think, therefore, the assignment is well taken. The
appellant, by special charges which were refused, having suggested this
error, the trial court should have corrected it by giving a proper charge
upon the issue.

3. Besides, if the first had been the only ground alleged, and the
evidence had shown a part of the debt alleged to be due for advances
was in fact due, though a part of it was not, Boswell would not be en-
titled to damages by reason of the whole crop being distrained (for in
event a part of the debt was due, appellant was entitled to levy upon
all the property upon which he had a landlord's lien), but only to such
damages as he may have actually sustained by reason of the wrongful
averment in the application of a greater amount due for advances than
was actually due when the warrants were applied for. McKee v. Sims,
92 Texas, 51.

4. If it should be conceded that the letter written by Boswell's at-
torney to appellant, to the effect that appellee was ready to consider any
reasonable proposition of settlement appellant might submit, was ad-
missible in evidence, then it might be that the facts appellant offered to
prove by his attorney, Mr. Supple, were admissible for the purpose of
showing that appellee, notwithstanding the statement in the letter, had
no intention of entertaining a proposition of compromise, and had such
letter written merely for the purpose of placing appellant in an un-
favorable attitude before the jury upon the trial of the case. But upon
no conceivable ground was such letter admissible in evidence. Its ex-
clusion upon another trial will leave no pretext for appellants' offering
the testimony, the rejection of which is complained of in his seventh
assignment of error.

5. The testimony of Boswell complained of in the eighth assignment
of error was admissible to show that the eighty-dollar note sued on was
without consideration. To show the true consideration or the failure
of consideration of a promissory note is not prohibited by the rule that it
is not permissible to change or vary a written contract by parol testi-
mony.

6. If, as is stated in appellant's ninth assignment of error, it ap-
peared from the answer of appellee, admitted to have been filed with
his knowledge and concurrence, in the suit of Bailey against him, that
he admitted the $45 credit given him in the account sued on by Bailey
was paid the latter by Watson, then the answer would be admissible in
corroboration of appellant's testimony that he paid that sum to Bailey
for the appellee, as a part of the consideration for one of the notes sued
on, and in rebuttal of appellee's testimony denying the truth of such
testimony. But no such admission or statement appears in such answer.
Therefore the court did not err in refusing, upon the ground of irrele-
vancy, to admit it in evidence.

7. It was not error for the court to admit the evidence, complained
of in appellant's tenth assignment, to show that a certain bill of sale

executed by appellee to appellant for three hogs was intended merely to secure the latter by reason of the former's having sold a cow upon which appellant had a mortgage. It is generally admissible to show that an instrument purporting upon its face to be an absolute deed is in fact merely a mortgage. Such testimony does not vary the written contract, but merely shows what it is in fact.

8. Evidence of the loss of time of appellee and family occasioned by the seizure of his crop may not have been admissible to show actual damages, because not the natural and proximate result of the seizure, but upon the issue of exemplary damages, we think, was admissible.

9. If the writs were wrongfully sued out, then the value of the time spent and expenses incurred by appellee in regaining possession of his property by replevying the same was a proper element of damages, and its admission was not error. Suth. on Dam., 2 ed., sec. 512.

10. The testimony of Oppenheimer that Kiersky's books of account showed that Boswell was indebted to him on open account $173.60, according to the books, inclusive of the $75 note, was secondary evidence and should not have been admitted.

11. Special charge number 9, by which appellant asked the court to instruct the jury that mortgage No. 52,979, on file in the office of the county clerk, was sufficient to put Kiersky on notice that it secured all indebtedness by note or otherwise owed appellant by Boswell on, prior to or subsequent to October 24, 1898, and to convey notice that the mortgage covered all stock owned prior to or subsequent to that date; and that if the jury believed from the evidence that the two gray mules, on which Kiersky claimed a mortgage, were owned by Boswell on or prior to October 24, 1898, and were so owned when the mortgage to Kiersky was made, to find that plaintiff's mortgage was superior to Kiersky's, was the law applicable to the facts and should have been given.

12. The action of the court in taxing all the costs of the case up to the time appellant filed his original petition was a matter largely within the sound discretion of the trial court, but if it could be made to appear that the original petition showed a good cause of action within the court's jurisdiction, then it would seem to us that, as the amendment simply omitted a part of the amount claimed in the original petition, the court went beyond sound judicial discretion in taxing such costs against appellent.

On account of the errors indicated the judgment of the county court, for both Boswell and Kiersky against appellant, is reversed and the cause remanded.

*Reversed and remanded.*