## COLEMAN et al. v. MAGNOLIA PROVISION CO. (No. 3234.)*

(Court of Civil Appeals of Texas. Texarkana. Jan. 25, 1926. Rehearing Denied Oct. 7, 1926.)

**1. Contracts ⬅127(1)—Rules of trade association made part of contract, that damages for breach of contract of sale should be determined by difference in price paid for goods on market and contract price, held not invalid as ousting courts of jurisdiction.**

Rules of trade association, subject to which contract was made, that on election of buyer to treat contract of sale as broken, damages would be difference between market price as determined by purchase through broker and contract price, were not invalid as ousting court of jurisdiction of controversy arising out of contract.

**2. Contracts ⬅127(1).**

Stipulations in contract intended to deprive courts of power to determine substantive rights of parties thereto are unenforceable as contrary to public policy.

**3. Sales ⬅418(6)—Damages of buyers on failure of seller to keep contract were fixed as contemplated by rules of trade association as contracted for, though no goods were actually purchased.**

Under rules of trade association, subject to which contract was made, that on election of buyer to treat contract of sale as breached damages would be difference between market price as determined by purchase through broker and contract price, damages of buyers on failure of seller to keep contract who invited bids through brokers, and themselves made lowest bid, were fixed as contemplated by such rules, though goods were not actually purchased.

Willson, C. J., dissenting in part.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by W. L. Coleman and others against the Magnolia Provision Company on contracts. From a judgment sustaining exceptions to plaintiffs' petition and dismissing the suit, plaintiffs appeal. Reversed and remanded.

The appeal is from a judgment sustaining exceptions to appellants' (plaintiffs in the court below) petition and dismissing the suit on their refusal to amend same.

It appeared from the allegations in the petition that the suit was on certain contracts in writing between appellee and the Hughes-Coleman Linter Corporation, entered into July 27, 1923, whereby the former sold the latter, subject to the rules of the Texas Cotton Seed Crushers' Association, 800 bales of cotton seed linters to be shipped as follows: 200 bales in September, 200 bales in October, 200 bales in November, and 200 bales in December, 1923. It was alleged that the linter corporation, on August 13, 1923, assigned the contracts to appellants. It was alleged, further, that shipments were made in September as agreed upon, but that appellee breached the contracts in that it failed to ship 9 of the 200 bales it had bound itself to ship in October, and failed to ship any of the 400 bales it had bound itself to ship in November and December. The rules of the Cotton Seed Crushers' Association (more than 600 in number) were made a part of the petition. In section 3 of one of the rules (No. 205) it was declared that—

"Failure or refusal on the part of the seller for ten days after receipt of buyer's instructions to ship in accordance with" provisions in the rule "shall give the buyer the option to treat the contract as breached by seller, and if he elects so to do, he must proceed as required by Rules 210–213. Such option must be exercised not later than five days after the expiration of contract period."

It was provided in rule 210 that—

"When a buyer elects to treat a contract as breached by the seller he must either cancel the

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted December 8, 1926.

contract or buy the product for account of whom it may concern."

Rule 212 was as follows:

"In those cases where the buyer or seller elects to buy or sell a product covered by a contract for account of whom it may concern, he must, when his right to do so has accrued, all rights of the opposite party having been forfeited, give immediate notice of his intention, by telegram, to opposite party. Such repurchase or resale must then be made through a recognized broker, a member of the association in good standing, in not less than 24 hours' and not more than 72 hours after such notice, and shall be for a period of shipping conforming as nearly as possible to the original contract. As soon as such broker has received his order to buy or sell he must immediately notify the interested party by telegraph. The broker will note on his confirmation contract the fact that the sale or purchase was made for account of whom it may concern, and will note thereon the name of the interested party in addition to the names of the buyer and seller in the transaction which he is confirming. He will send a copy of such confirmation contract to each of the three parties named therein."

It was alleged in the petition that—

"Upon the refusal of the defendant (appellee) to make shipment for November, 1923, and not later than five days after the expiration of the contract period, to wit, November 30, 1923, the plaintiffs under date of December 3, 1923, gave the defendant telegraphic notice of their intention to buy for account of whom it may concern the contract quantity then due, to wit, 209 bales of linters."

It was alleged further, that—

Appellants thereafter, as provided by the rules, "made such purchase of the linters through a recognized broker, a member of the association in good standing, to wit, P. G. Claiborne, within the time and manner provided by the rules."

Like allegations were made with reference to the 200 bales which by the terms of the contract were to have been shipped by appellee in December, 1923. It appeared from the petition that the broker through whom, it was alleged, the purchases were made, invited bids from both appellants and appellee, as well as other dealers, and then bought from appellants; their offer, as he determined, being the lowest. With reference to this feature of the case it was alleged in the petition that—

Appellee "actually made its offer in connection with said sale of the December portion of said contracts in which it bid three-eighths of a cent per pound higher than that at which the said sale was made to these plaintiffs. These plaintiffs show to the court that it is contended by the defendant that these plaintiffs did not comply with the rules in making such sale, in that they themselves were the purchasers, but the plaintiffs show that the defendant was in no manner prejudiced thereby, but was in fact benefited thereby, in that the plaintiffs for said December linters made the lowest offer therefor, indeed lower by three-eighths of a cent per pound than the offer made by defendant Magnolia Provision Company, and wherefore plaintiffs say that the defendant Magnolia Provision Company cannot properly complain of that from which it suffered no injury, but in fact from which it obtained a large benefit; and plaintiffs further show that it cannot properly complain of the plaintiffs being the purchasers with respect to the December delivery, because its bid was not only much higher than plaintiffs' bid, but in fact higher than other actual bids made by other third parties. Plaintiffs allege that the defendant also made its bid upon the 209 bales of linters to be delivered in November and bid therefor 7½ cents per pound f. o. b. cars at its mill, whereas the offer which was made to them was for a bid f. o. b. Houston as per the terms of the contract, and that defendant did not make its bid in accordance with the terms of the telegram to the defendant requesting its bid. Plaintiffs made their bid at 7⅝ cents per pound for said linters, which bid was accepted on account of the fact that the defendant made its bid f. o. b. cars its mill instead of f. o. b. Houston, and wherefore it was considered, as was in fact the case, that the plaintiffs had made the lowest bid. In this connection these plaintiffs say that if their bid at 7⅝ cents per pound f. o. b. Houston was not in fact lower than defendant's bid at 7½ cents per pound f. o. b. cars at defendant's mill, then plaintiffs say that they are willing and now offer to allow defendant in commutation of the damages any difference between the defendant's bid and these plaintiffs' bid, and wherefore these plaintiffs say that thereby the defendant will suffer and has suffered no injury by reason of the said bid for said 209 bales being accepted from plaintiffs instead of defendant. Wherefore plaintiffs show to the court that they have been damaged in the sum of $6,000, arrived at by the difference between the market value of said undelivered linters at the time when delivery should have been made under the terms of said contracts, and the price at which these plaintiffs purchased the same from defendant as aforesaid, together with interest on said sum at the rate of 6 per cent. per annum from the time when as aforesaid such deliveries were due, for which sum the plaintiffs pray. Plaintiffs in the alternative say that by reason of the failure to make deliveries of said remaining linters these plaintiffs have been actually damaged in the sum of $6,000, said damages being computed in accordance with the rules of said Texas Cotton Seed Crushers' Association, if it shall be in fact held that the rules of said Texas Cotton Seed Crushers' Association apply to the manner and form of fixing plaintiffs' damages, together with interest on said sum from the time delivery of the said linters was due as aforesaid."

Rule 213 was as follows:

"The methods of fixing damages for breach of contract outlined in the foregoing rules are exclusive, and failure to follow the procedure there required will defeat a claim for breach of contract."

Among the exceptions to the petition sustained were the following:

"(1) Defendant demurs generally to the allegations in said petition contained and says that the same are wholly insufficient to state any cause of action against this defendant."

"(6) Defendant specially excepts to said petition for that the same affirmatively shows that plaintiffs are not entitled to recover on the cause of action sued on because plaintiffs failed to buy for account of whom it may concern the 409 bales of linters, for failure to deliver which this suit is brought, as required by rules 210 and 213 of the rules of the Texas Seed Crushers' Association, pleaded by plaintiffs as a part of their contract herein; the pleading in this respect showing that plaintiffs merely employed and paid a broker to write out purported memoranda of sales by plaintiffs to themselves. The rules pleaded by plaintiffs, which form a part of their contract herein require a buyer situated as plaintiffs were, to go out into the open market and buy the commodity involved or else forfeit all claim for damages, the alleged contract having obligated plaintiffs to make such repurchase and having expressly eliminated the common law measure of damages, and plaintiffs, having failed to follow the contract method, are not entitled to recover herein, on which exception the defendant prays the judgment of the court."

"(8) This defendant specially excepts to that portion of said petition which sets forth on the last page thereof the prayer for the recovery of $6,000 representing the difference in market price of said 409 bales of cotton linters, because from the facts theretofore alleged in the plaintiffs' petition they are not entitled to recover such market difference, but plaintiffs' damages could be fixed only in the method outlined in the contract pleaded by them, on which exception defendant prays the judgment of the court."

Franklin & Blankenbecker, of Houston, for appellants.

Walter H. Walne, Jas. L. Shepherd, Jr., and Baker, Botts, Parker & Garwood, all of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] It will be noted that a method provided by rule 212 set out in the statement above for fixing the amount of damages, if any, where a buyer having a right to treat a contract as breached elected to do so, was for the buyer to go on the market (through a broker recognized by the Texas Cottonseed Crushers' Association) and buy the product he was entitled to have the seller deliver to him. Pursuing that method, the amount of the damages would be the difference between the sum the buyer had to pay for the product on the market and the sum he would have had to pay the seller had the latter delivered the product as agreed upon. It was on the theory, it seems, that the method provided was exclusive of all other methods, as it was in effect declared to be in rule 213 set out in said statement, and that it appeared from the allegations in the petition that appellants did not pursue it, that the exceptions to the petition were sustained.

Appellants insist the rules specified were invalid if they meant what the trial court seems to have determined they did; for in that event, appellants say, the effect of the rules, if enforced, would be to oust the courts of jurisdiction of controversies between them and appellee arising out of the contract.

[2] There is no doubt the general rule is that stipulations in a contract intended to deprive the courts of power to determine the substantive rights of parties thereto are contrary to public policy and therefore unenforceable. Price v. Thresher Co. (Tex. Civ. App.) 264 S. W. 113; Watson v. Boswell, 25 Tex. Civ. App. 379, 61 S. W. 407; 3 R. C. L. 752; 13 C. J. 455, 457, and authorities there cited. However, the rules specified, we think, did no more than provide a method for determining the damages if the contract was breached, and such a provision is held not to be a violation of the rule of law referred to. Scottish Union & Nat. Ins. Co. v. Clancy, 71 Tex. 5, 8 S. W. 630. In the case cited the court said:

"If the stipulation was to deny or repudiate the jurisdiction of the courts to determine the rights and liability of the parties arising upon the contract, we would hold, with the weight of authority, such stipulation void. But here the stipulation does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts. In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid."

[3] Appellants next insist, if the rules specified were valid, it appeared from the allegations in their petition that they complied with same by buying the linters on the market. In effect the allegations were that appellants bought the linters of themselves. If appellants could not do that, and we think they could not (Dallas Waste Mills v. Early-Foster Co. [Tex. Civ. App.] 218 S. W. 515; Planter's Oil Co. v. Gresham [Tex. Civ. App.] 202 S. W. 145; 13 C. J. 261), the contention in question should, of course, be overruled. But if it should be, appellants insist, and a majority of the members of this court agree, the action of the trial court was nevertheless erroneous, because, appellants say, and said majority agree, it appeared from allegations in the petition that the damages appellants sought to recover were in effect fixed as contemplated by said rules and were for a less amount than they would have been entitled to recover of appellee had they complied with said rules by actually buying the linters on the market.

It is urged, in effect, in support of the view that it appeared that the purpose of the rules was substantially accomplished, that the bids presented to the broker by appellee and other dealers in linters, as alleged, showed the price at which the linters in question were purchasable on the market. It is argued that the damages to appellants from appellee's breach of the contract therefore

were ascertainable in the way, substantially, provided by the rules, and that it was immaterial that the linters were not actually purchased by appellants as contemplated by the parties.

In that view of the case, appellants insist, and said majority agree, the judgment of the trial court was erroneous and should be reversed. The writer thinks an actual purchase of the linters as contemplated by the rules specified was indispensable to a right in appellants to recover anything of appellee; that the trial court therefore did not err when he sustained the exceptions to the petition; and hence that the judgment should be affirmed.

One of the purposes of the rules requiring a buyer who, as appellants did, elected to treat a contract subject thereto as breached to go on the market and buy the product the seller failed to deliver as agreed upon, was, the writer thinks, to eliminate all elements of speculation in determining the damages actually suffered by a buyer if a seller breached the contract. To accomplish that purpose the parties had a right to agree upon the method they did agree upon and to provide, as they did, that it should be pursued to the exclusion of all other methods. The parties having such a right and having exercised it, and it appearing from the allegations in the petition that appellants did not pursue the method agreed upon, in that they did not actually buy the linters on the market, the writer thinks the trial court could not properly have done otherwise than sustain the exceptions to appellants' petition. To have overruled the exceptions, as the writer sees it, would have been to hold, in effect, that the court could ignore the contract the parties made and make one for them.

In conformity with the conclusion reached by a majority of the members of the court, the judgment is reversed and the cause is remanded for a trial on its merits.