**WAMPLER et al. v. HARRINGTON et al.**

No. 6678.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 15, 1953.

Rehearing Denied Nov. 12, 1953.

Hurst & Burke, W. C. Holcombe, Longview, for appellants.

Harrington & Harrington, Earl Roberts, Clyde H. Hall, Longview, for appellees.

LINCOLN, Justice.

The appellants as plaintiffs sought judgment in the court below against four sets or groups of defendants: W. R. (Pete) Henderson, who will be referred to by name; appellees H. M. Harrington, Jr., L. R. Eddy, Ernest O'Hearn, Jr., and Reid Allgood, who will be referred to as appellees; J. K. Maxwell, who will be referred to by name; and A. A. King, Edward King, John Solon King, Viola Lipscomb and Dabney Lipscomb, her husband, R. O. Kenley, Jr., and Earl Sharp, who will be referred to as the King group. Upon return of a jury verdict, judgment was entered for appellants against the defendant Henderson, from which no appeal has been taken. An agreed judgment was entered in favor of the King group as innocent purchasers for value ($\frac{5}{20}$ interest), from which no appeal has been taken. At the conclusion of the plaintiffs' case, an instructed verdict was returned in favor of the appellees Harrington, Eddy, Allgood and O'Hearn, Jr., and judgment was entered in their favor except on their cross-actions, and judgment was also entered in favor of Maxwell. The court refused appellants' request for peremptory instruction. The appeal challenges the rulings last mentioned and the judgment rendered for appellees, as well as the judgment in favor of Maxwell. The result so far as the cross-actions are concerned will be stated later in this opinion.

Appellants brought this suit to recover an undivided $\frac{3}{4}$ interest in an oil and gas leasehold estate acquired by Henderson at a time when a partnership was existing between appellants and Henderson, alleging that such interest was acquired by Henderson without the knowledge or consent of appellants, was in opposition to the general partnership business of appellants and Henderson; that Henderson's acquisition of same was fraudulent as to appellants, and they sought to establish a constructive trust against the Henderson interest. The property involved consists of a portion of Tract No. 8 of the Sabine River Bed, about 65 acres, the lease on which had been previously granted by the State of Texas, acting through its board of Mineral Development, subsequently known as the School Land Board; and in addition thereto the suit involved a surface lease on four tracts of land on the south and west side of the river bank, consisting of 1.5 acres each, acquired by Henderson from some of the King group to be used as sites for directional drilling of oil wells in the Sabine River Bed and for tanks. The suit also called for an accounting in oil runs and sales therefrom.

The case was submitted to the jury as between appellants and Henderson and in response to special issues the jury found: That at the time the leasehold estate was acquired by Henderson a partnership existed between him and appellants, and that such partnership was engaged in the oil business for the purpose of acquiring, developing, operating and dealing in mineral interests; that Henderson did not make a full disclosure to appellants that he had acquired such leasehold interest prior to the acquisition thereof; that Henderson had acquired the surface lease from the King group under the same circumstances; that appellants did not consent to the acquisition of the River Bed lease by Henderson for his individual account on or prior to the date of dissolution of said partnership; that appellants did not know that Henderson had acquired such interests on or before November 19, 1949; that the appellants knew that Henderson owned an interest in the River Bed lease before the initial development of said lease began; that they had not advised Henderson of their claim prior to initial development of such lease; that they knew Henderson had acquired an interest in the lease during its development and did not at any time during the development advise Henderson that they claimed an interest therein. The jury verdict finds support in the evidence.

There is no conflict in the material facts. A partnership between the two Wamplers, Charles and Floyd, had existed prior to May 1, 1947, and on that date Henderson entered the partnership on one-fourth basis and three-fourths equally held by the two Wamplers. It continued to operate under the old firm name of Wampler Brothers until dissolution on September 30, 1949. The partnership was engaged in the business of contracting for and drilling and developing for oil and gas, and in such business the partnership also acquired interests in oil, gas and mineral rights. The four appellees knew the business in which the partnership was engaged and at all times relevant hereto knew that Henderson was one of the partners.

The first instrument which is the basis of the suit, pleaded and introduced by appellants, is an assignment of the interests of Producers Investment Corporation and U-Tex Oil Company, the then owners of the leasehold estate on that portion of the River Bed referred to. It is also a mutual contract which required the signatures of the two corporations as assignors and of Henderson, the assignee. It bears date May 26, 1949, and the testimony shows that Henderson signed and acknowledged it on that date. Producers executed and acknowledged the instrument by and through Toddie Lee Wynn, its president, in Dallas, Texas, on May 30, 1949. U-Tex executed and acknowledged through H. E. Raddatz, its president, in Salt Lake County, Utah, on June 30, 1949. An amendment appearing on the instrument which, by its terms, "shall hereafter become a permanent part of the agreement," was signed and acknowledged by Henderson in Gregg County, Texas, on August 3, 1949. The instrument was filed for record in Gregg County and recorded in the deed records on August 8, 1949.

The original surface lease to the four tracts of 1.5 acres each was executed by A. A. King as an assignment to Henderson, but was likewise an agreement requiring the signatures of both King and Henderson. It bears date *July* 27, 1949, and was signed and acknowledged by King in Gregg County on June 27, 1949. Henderson signed and acknowledged it on June 28, 1949. The date July 27, 1949 as the date of the instrument, seems to have been treated as a clerical error, the true date being June 27, 1949.

Nine producing oil wells have been brought in on the property, they are still producing, and the oil runs have been sold. The River Bed lease and the King lease were acquired in Henderson's name for exploring and developing for production of oil and gas.

Appellants (plaintiffs) further introduced in evidence an assignment to J. K. Maxwell, dated April 1, 1950, filed for record June 12, 1950, and recorded in Gregg County deed records June 15, 1950. It recites that the (Henderson) working interest in the River Bed lease in question "is now owned by the following named persons (being the grantors or assignors therein) in the proportions set opposite their respective names:" Pete Henderson, H. M. Harrington, Jr., Reid Allgood, Ernest O'Hearn, Jr., and L. R. Eddy, each listed as owning a $\frac{3}{20}$ interest; A. A. King, Viola Lipscomb, Edward King and John Solon King, each listed as owning $\frac{3}{64}$ interest; R. O. Kenley, Jr., and Earl Sharp, each listed as owning $\frac{1}{32}$ interest. The last six named persons compose what we have referred to as the King group. It will be observed that the total of their interests is $\frac{1}{4}$ of the Henderson working interest. The instrument assigns to Maxwell, in consideration of his drilling, testing, completion and complete equipping of wells numbered 19, 18 and 17, in the River Bed lease, 95% of the oil and gas accruing from said wells to each of the assignors severally, until Maxwell has been paid out of the net production of said wells the sum of $75,000 with interest. The grantors severally retained the option to purchase the unpaid balance due by each. It carried this provision: "Each of the parties severally represent and warrant that they are the owners of the undivided interests above specified, and that they have severally good right and authority to sell and convey their proportionate part of the proceeds of oil and gas herein conveyed,.

free and clear of any liens and encumbrances, or claims of other parties." The instrument was signed and acknowledged by Henderson, the four appellees, and each of the King group.

Appellants introduced a second assignment to Maxwell, dated May 1, 1950, filed for record June 12, and recorded June 15, 1950. It was executed by the same persons as executed the assignment next above. It relates to the drilling and completion of wells numbered 13–A, 12 and 11, and the obligation named is $65,000. In all other respects it is identical with the first Maxwell assignment, supra, the working interest owned by each of the assignors being the same as in the other.

Appellants introduced a third assignment to Maxwell, dated April 1, 1950, filed June 12, and recorded June 15, 1950. It relates to drilling and completion of wells numbered 14, 15 and 16, and the obligation named is $75,000. In all other respects it is identical with the assignments above stated, the grantors and the several interests owned by them being the same as in both the other assignments.

All the foregoing facts were introduced at the instance of appellants. In fact, the only witnesses testifying in the case were those called by appellants, including Henderson and the appellees as adverse witnesses. The assignment of the River Bed leasehold to Henderson recites that "said lease and all rights thereunder as subsequently modified by agreement with the State of Texas covering payment of royalty * * * is now owned by" the assignors; and the assignment to Henderson was to the oil and gas leasehold estate "now owned" and held by the assignors. Furthermore, by its own terms it was subject to reservations, covenants and options set forth therein.

It is obvious from the instrument itself, that the exact working interest assigned to Henderson was not expressed therein. Such interest was subject to proof. The three assignments to Maxwell provided the proof. The same instruments show that the appellees each owned 3⁄20 working interest in the lease. As to these facts there is no contradiction.

The ground of appellants' request for peremptory instruction at the close of their case was that they were entitled under the proof made to 3⁄4 of 43⁄64 of the leasehold estates. The request was refused. On the basis of the proof made by the case as a whole, appellants were entitled to an instruction in their favor insofar as the 3⁄20 interest held by Henderson is concerned; that is, they were entitled to 3⁄4 of such 3⁄20. However, the court entered judgment in their favor for such interest, and any error of the court in refusing appellants' peremptory instruction as to such interest was thereby cured.

In view of the introduction by appellants of the assignments to Maxwell, it was entirely a question of law as to the interest held by Henderson and by appellees. Appellants made a prima facie case for 3⁄4 of 3⁄20 working interest, but the evidence upon which such case was made also affirmatively shows that each of the appellees was entitled as a matter of law to 3⁄20 working interest in the lease. The peremptory instruction given by the court in favor of appellees was the only instruction that could be given, and the judgment on this phase of the case as entered by the trial court is the only judgment that could correctly be rendered on the facts in evidence.

The judgment decreed that the interest recovered by appellants should be subject to three-fourths of the outstanding indebtednesses that were shown, including the Maxwell debt and Tyler State Bank, the latter also having been introduced by appellants. It further provided that the recovery by appellants was subject to 3⁄4 of the costs of drilling and equipment and of the cost of operation of said lease. We think there was no error in these provisions.

As to Maxwell, the court gave him judgment upon his cross-action for the benefit of himself and his assigns on the oil payment assignments, effective against all par-

ties including the interest decreed to appellants. Such provisions in the judgment were proper and equitable.

It is to be further noted that at the conclusion of appellants' case, they consented to a judgment for ¼ of the Henderson working interest in favor of the King group. This further evidences the fact that appellants recognized throughout the trial that Henderson did not actually own ⁴⁸⁄₆₄, and it was incumbent upon appellants to show the interest actually owned by him. In addition to the assignments to Maxwell, proof was aided by the consent judgment in favor of the King group.

 It follows, then, that the only case made by appellants was for ¾ of Henderson's ³⁄₂₀ interest, which interest appellants were entitled to on the undisputed facts and because of the law of partnership. No actual fraud was shown, but the law reads into Henderson's action in acquiring this lease, that the partners are entitled to their proportionate part of his actual interest in the operation. "A partner may not acquire, for his own benefit, any title or interest adverse to the firm without the consent of his copartners, and, if he does so, he holds it in trust for the benefit of the partnership and must account for the profits of the transaction." 68 C.J.S., Partnership, § 105, p. 548. See also MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334. The only interest acquired by Henderson was ³⁄₂₀. When appellants showed that interest they made their case to that extent.

It follows, therefore, that there was no error in the action of the court in refusing appellants' request for an instructed verdict, and in granting the request of appellees for such verdict, and no error is shown in these respects in the judgment entered. Appellants' points one and seven are respectfully overruled.

In the course of the trial the appellees, in connection with their examination of witnesses called by appellants, introduced a considerable amount of testimony relating to negotiations leading up to the acquisition of the River Bed lease. Such testimony showed in substance that when they learned of the possibility of acquiring such lease Henderson and the four appellees held a conference and agreed among themselves that they would attempt to secure such lease, and that each of them should own a ⅕ interest therein if and when acquired; that they would develop it for the discovery of oil, each bearing equal expense, and they agreed upon the part that each of the five was to perform. Henderson was selected to confer with the owners of the lease, and after doing so he reported back that the lease could be obtained. The five then agreed among themselves that the lease or assignment would be taken in the name of Henderson for the use and benefit of each of the five in equal parts. A form of the lease agreement was prepared by Harrington and submitted to the proposed assignors, who made some changes and returned it to Harrington. Harrington then prepared another lease to conform to such changes. It was dated May 26, 1949, and was signed by Henderson on that date. We have already shown the dates of the various signatures and acknowledgments, and the amendment that was added to it. When all this was done the instrument fully executed was returned to Harrington August 8, 1949, whose duty it was to perform the legal services in connection with the project. Harrington then called his associates, and before the lease would be accepted as executed the five of them entered into a written agreement. Such agreement, designated "Declaration of Interest and Operating Agreement," was executed on August 8, 1949. As soon as the agreement was completed Harrington then caused the lease assignment to be filed of record.

To all that testimony the appellants strenuously objected throughout the trial and bring their objections to this court for review. One purpose of the testimony was to show the several interests of Henderson and the appellees. In this respect it accomplished the same purpose as appellants'.

testimony in the introduction of the Maxwell assignments; and from that standpoint there was no error in its admission.

■ We think furthermore it was admissible under general authority. James v. Fulcrod, 5 Tex. 512; Gardner v. Randell, 70 Tex. 453, 7 S.W. 781; Sanders v. Stinnette, Tex.Civ.App., 73 S.W.2d 637, error refused. In Lanier v. Looney, Tex. Civ.App., 2 S.W.2d 347, 350, writ refused, the court said: "Parties contemplating the joint purchase or lease of land may orally agree to such an undertaking in advance of such purchases and leases, and may orally agree, for a valuable consideration passing from the one to the other, that the deeds or leases acquired shall be taken in the name of one of them, but that the interest of each in the land shall be in a named proportion. The party in whose name the deed is taken, as between himself and the other party to such transaction, holds the interest in trust for the party unnamed in the deed. Such an agreement is not an oral transfer of the title to the land, for the party in whose name the title stands took such title, not only for himself, to the extent of his agreed interest, but also as trustee for the other party to the extent of his agreed interest." This holding was recently quoted with approval in Newton v. Gardner, Tex.Civ.App., 225 S.W.2d 598, error refused, n. r. e., and we believe it correctly states the law.

■ Appellants having alleged fraud on the part of Henderson, and taking the position that appellees conspired with Henderson and were seeking unjust enrichment at the expense of appellants, the question of good faith on the part of appellees was a pertinent fact for inquiry. The testimony last referred to being uncontradicted, it was within the province of the trial court to determine as a matter of law whether it showed good faith on the part of appellees and Henderson. This ruling is further supported by the following authorities, with numerous citations: 20 Tex.Jur., p. 153, Sec. 105, p. 158, Sec. 108, p. 160; 24 Am.Jur., pp. 86, 89, 101. In 24 Am.Jur., p. 146 it is said: "A case, however, should not be submitted to the jury on an issue of fraud if the evidence appears slight and insufficient in view of the degree of proof which is requisite to establish fraud. A verdict is properly directed against the party who is charging fraud where the evidence is insufficient to authorize a finding of fraud even though he is given the benefit of every inference in his favor that can be drawn from the facts in proof."

■ If the verbal negotiations and agreements last referred to were not admissible it would be for the reason that they were merged in the written agreement executed by Henderson and appellees on August 8th. Briefly, that agreement sets forth the terms orally discussed by them, and which we have already stated. As such, it was admissible to that extent. Among other things it contained the following provision:

"I, Pete Henderson, do hereby declare that I am now, and will hereafter hold the record title to said oil and gas lease and operating rights for the benefit of the five signatory parties hereto, each in equal interest. I further agree that this shall be done only at the will of each of the parties hereto, and that any party may terminate this agreement by the recording of his copy of this instrument, after which time he shall, and I do hereby convey to each of such parties their respective interests in and to said leasehold estate and operating agreement and all rights thereunder, subject, however, to all obligations now existing or which I may hereafter place thereon in the carrying out of said contract." It thus appears that the "Declaration of Interest and Operating Agreement" provided for an express trust in Henderson for the benefit of him and appellees. Having been executed simultaneously with the acceptance of the lease assignment to Henderson, the two instruments should be construed together. In Rudes v. Field, 146 Tex. 133, 204 S.W.2d 5, 7, Judge Sharp said: "Separate instruments contemporaneously executed as part of the same transaction and relating to the same subject matter may be construed to-

gether as a single instrument.' (Citing authorities.) The rule relating to the construction of contemporaneous writings is expressed in 14 Texas Jurisprudence, page 926, Section 147, as follows: 'That separate deeds constitute one transaction may be shown by parol evidence. They are then to be construed together, even though the result be to modify one of the instruments which, standing alone, would have a different construction. Thus a deed absolute in form, substance and effect has been held to be wholly conditional, the condition being expressed in a contemporaneous contract.'

"This rule applies to conveyances of realty although they do not expressly refer to the contemporaneous agreement. (Citing authorities.) It was held in Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, that it is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties." When the two instruments are construed together, it is clear that the adventure was entered into by the appellees and Henderson for their own benefit and that Henderson acquired no more than one-fifth of the total working interest of the five adventurers. We thus hold that the "Declaration of Interest and Operating Agreement" was admissible.

 Appellants also present points alleging error in the admission of parol testimony relating to conversations between appellees and others and letters written and received by them. Without attempting to state such testimony in detail, we have examined it and do not think any error is presented calling for a reversal of the case. Much of it was corroborative of evidence already held admissible. If any portions of it were not admissible the presumption is that the court did not base his judgment upon inadmissible testimony, and there is sufficient testimony in the record to authorize the judgment entered without considering that which was objected to by appellants.

 It follows that in our opinion appellants' points of error should be, and they are hereby overruled, which ruling calls for an affirmance of that part of the judgment not included in the appellees" cross-appeal.

The "Declaration of Interest and Operating Agreement" referred to provided in paragraph 6 that Henderson shall be in charge of contracting for drilling and equipping the wells to be drilled. He was authorized to "employ his present co-partnership of Wampler Brothers in the drilling of such wells, provided the compensation agreed to be paid the said Wampler Brothers shall be in line with charges made by other reputable contractors." However, a contract with Wampler Brothers was never made, and they did not drill the wells. Paragraph 6 then continued: "It is further the understanding and agreement of the parties that no special charge shall be made by the said Pete Henderson for overseeing such work other than the charge made by Wampler Brothers as drilling contractors. *It is further the distinct understanding and agreement of the parties hereto that this shall not constitute a contract with Wampler Brothers, and that Wampler Brothers, as such, shall never at any time be entitled to participate in the ownership of said leasehold estate nor in the ownership held by the said Pete Henderson; and it is specifically understood and agreed that before said partnership shall be entitled to participate, the interest of Pete Henderson shall become null and void, and pass to and vest in the other remaining joint signatories hereto.*" (Italics ours).

Appellees' cross-appeal assigns error of the trial court in entering judgment for appellants for $\frac{3}{4}$ of $\frac{3}{20}$ of the Henderson interest, and in holding that the italicized portions of the foregoing "provision of paragraph 6 of the agreement of August 8, 1949 * * * is ineffectual to defeat the recovery herein by the plaintiffs, Charles Wampler and Floyd Wampler." In sup-

port of their assignment they present three propositions: 1. That the italicized portion of paragraph 6, supra, constituted a special limitation or determinable fee in Henderson, and that on the happening of the event named the title in Henderson terminated and vested in appellees. 2. The intention of the parties as expressed therein must be effectuated. 3. The appellants claim title under and through Henderson, and are bound by the terms and conditions in Henderson's chain of title.

■■■ The principle that a conveyance of land or of an interest in land may contain a "special limitation" making the interest of the grantee determinable on the happening of a certain event has long been recognized by the courts of this state. "One who grants property to another may qualify the estate, interest or right which the deed transfers to the grantee, imposing a condition the non-performance of which shall work a forfeiture of the estate or specifying a contingency upon the happening of which the estate shall terminate." 17 Tex.Jur., pp. 107–108, Sec. 9. The grant may provide for a reverter, or a "limitation over," or "conditional limitation" to a third person. Id., p. 110, Sec. 11. A full discussion of this question may be found in Cragin v. Frost National Bank, Tex.Civ.App., 164 S.W.2d 24, writ refused w/m, and numerous authorities are there cited. See also A.L.I., Restatement, Property, Sec. 23, p. 55, Sec. 44, p. 121; Johnston v. McDonnell, 37 Tex. 595; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Gibson v. Berry Cemetery Ass'n, Tex. Civ.App., 250 S.W.2d 600.

But in all the decided cases to which we have been referred, the conditional limitation was expressed in the conveyance itself. In all the texts we have found the discussions are premised on that fact. We know of no authority, and we are not cited to any, holding that grantees in a conveyance may engraft a defeasible condition upon the title conveyed. When Producers

and U-Tex assigned their title in the River Bed to Henderson, no defeasible or determinable fee was included. Appellees had an equitable title by virtue of the agreement between them and Henderson, and Henderson held such title in trust for them to the extent of their interest. But Henderson acquired an absolute and indefeasible title to the proportion of 9/20 by virtue of the assignment.

■■ Under the law of partnership to which we have referred, Henderson also held his 9/20 interest in trust for appellants to the extent of their 3/4 interest therein. That title vested and ripened in appellants at the very instant that it vested in Henderson. Appellants could not be defeated of their interests by any agreements between Henderson and appellees alone.

■■■ The law reads the trust in Henderson to the extent of his interest, and the matter of his intentions is not material. It is the prerogative of the courts to enforce a trust once it is established, and parties may not contract to deprive the court of its jurisdiction. 10 Tex.Jur., p. 207, Sec. 120; 17 C.J.S., Contracts, § 229, p. 603; 2 Elliott on Contracts, Sec. 725.

■■■ Any contract the result of which would modify established law or deprive the courts of their power to protect private rights and liabilities is contrary to public policy and void. Frick-Reid Supply Corp. v. Meers, Tex.Civ.App., 52 S.W.2d 115; Watson v. Boswell, 25 Tex.Civ.App. 379, 61 S.W. 407; Price v. Advance-Rumley, etc. Co., Tex.Civ.App., 264 S.W. 113; Holt v. Wilson, Tex.Civ.App., 55 S.W.2d 580; Kuteman v. Stone, Tex.Civ.App., 150 S.W.2d 102.

This, in our opinion, disposes of appellees' cross-assignment and propositions thereunder, and they are respectfully overruled.

The judgment of the district court is in all things affirmed.