### SANDERS et al. v. STINNETTE et al.

No. 11448.

Court of Civil Appeals of Texas. Dallas.
June 2, 1934.

Rehearing Denied July 6, 1934.

Touchstone, Wight, Gormley & Price, of Dallas, for appellants.

Levy & Evans and Stewart W. Hellman, all of Fort Worth, for appellees.

BOND, Justice.

In a suit instituted in a district court of Dallas county by Mrs. J. M. Stinnette, a widow, and Mrs. George Light, joined by her husband, George E. Light, against Mrs. Virginia Sanders and her husband, J. A. Sanders, and J. E. Stack, for the purpose of recovering an undivided two-thirds interest in an oil and gas mining lease on 15 acres of land in the W. H. Castleberry survey in Gregg county, Tex., a judgment was entered in favor of appellees. Appellants have duly prosecuted an appeal to this court, and the following are the necessary facts:

Stack is not a party to this appeal, he having settled the issues with the other parties during the trial of the case. J. A. Sanders and Mrs. Virginia Sanders are the appellants, and Mrs. J. M. Stinnette, Mrs. George E. Light, and George E. Light are the appellees.

In December, 1930, Mrs. Blanche Blewett was the agent of the owner of the gas and mineral lease in this land and, on or about December 26, 1930, had an interview with Mrs. Sanders in respect to a sale of the lease. On January 2, 1931, a sale of the lease was consummated; Mrs. Sanders, paying the purchase price of $150 from her own funds, took the assignment in her name and placed it of record, thus showing the record title to be in her. All of the parties live in Dallas, except Mr. and Mrs. Light, whose home is in Pilot Point, Denton county, Tex. Mrs. Stinnette and Mrs. Light are sisters. At the time in question, the three ladies were close personal friends, resulting from both social and business contacts. Neither Mr. Sanders nor Mr. Light claim any personal interest in the oil and mineral lease in question. Mrs. Sanders, by virtue of the purchase having been made by her, as above related, claims that she holds exclusive title to the lease. Mrs. Stinnette and Mrs. Light do not deny the facts under which Mrs. Sanders asserts title to the lease, but claim that on or about December 28, 1930, prior to the passing of the record title to Mrs. Sanders, an agreement had been entered into, to the effect that the three would purchase the lease in equal ownership; that Mrs. Sanders would advance the purchase price, and, within a few days, be repaid by the others; and that for convenience the title would be taken in the name of Mrs. Sanders, who was to act as trustee for the joint use and benefit of the three. In pursuance of such agreement, Mrs. Sanders purchased the lease, paid the consideration, and took title in her own name. Mrs. Stinnette and Mrs. Light each delivered to Mrs. Sanders $50, as agreed, which was accepted as their part of the purchase price.

In answer to this claim of appellees, Mrs. Sanders denies that any agreement was entered into between herself and the other claimants prior to the purchase of the lease, and that when she purchased it she did so solely for her own personal benefit. She admits that on January 19, 1931, she received the $50 from Mrs. Stinnette and Mrs. Light, but claims that the acceptance of this money was not in pursuance of any pre-purchase agreement, but was only because of the friendship for appellees, and because they had been theretofore jointly interested in other business transactions of like character, thus concluded that she would share this purchase with them, and subsequently make a deed of conveyance to each of them of a one-third interest in the lease. Mrs. Sanders also admits that, because of the intention thus formed, to take the other two ladies into equal ownership with her, she made statements to different parties that the lease was jointly owned by the three, and represented that each owned a one-third interest in the lease, but that a disagreement arose between her and the other ladies growing out of an attempted sale of the lease, thus causing her to change her mind and refuse to transfer to the others any interest in the lease and to proffer back to them the $50 that had been paid, and which she had accepted—not under the agreement claimed by appellees, but under her subsequent intention of letting them in as co-owners. Appellees refused this proffer.

After their ownership had been repudiated, appellees instituted this suit, basing it on the ground that Mrs. Sanders held title to the lease, not as exclusive owner, but as owner of a one-third interest therein and as trustee for them as owners of a two-thirds interest. The allegations in the petition in this respect are full and complete, and assert a cause of action against appellants. Appellants defended, on the ground that any agreement that might have been entered in-

to between Mrs. Sanders and appellees was subsequent to her acquiring title to the lease in controversy, was entirely oral, and hence void, so far as passing to appellees any title in the land. The allegations in the answer in this respect are also full and complete, and sufficient on the face of the pleadings to defeat appellees' cause of action. The parties submitted substantial evidence upholding their respective contentions. Other questions are raised, which will be later referred to.

The case was submitted to the jury on special isues, which issues and the verdict thereon are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that prior to January 2, 1931, Mrs. Sanders agreed with Mrs. Stinnette and Mrs. Light to purchase the lease in question for the joint benefit of herself, Mrs. Stinnette and Mrs. Light? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 2: Do you find from a preponderance of the evidence that pursuant to the agreement, if any, to purchase the lease for the joint benefit of Mrs. Sanders, Mrs. Stinnette and Mrs. Light, Mrs. Sanders did purchase said lease for the joint benefit of herself, Mrs. Stinnette and Mrs. Light? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 3: Do you find from a preponderance of the evidence that pursuant to the agreement, if any, to purchase said lease for the joint benefit of Mrs. Sanders, Mrs. Stinnette and Mrs. Light, the title to said lease was taken in the name of Mrs. Sanders for convenience? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 4: Do you find from a preponderance of the evidence that it was a part of the agreement, if any, to purchase said lease for the joint benefit of Mrs. Sanders, Mrs. Stinnette and Mrs. Light, that Mrs. Sanders would advance the purchase price, and that Mrs. Stinnette and Mrs. Light would thereafter pay to Mrs. Sanders their respective parts of the amount so advanced, if it was, by Mrs. Sanders? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 5: Do you find from the evidence that at the time of acquiring said lease, Mrs. Sanders intended to purchase the same for herself alone? Answer 'yes' or 'no.' Answer: No.

"In connection with special issue No. 5, you are instructed to disregard the instruction in paragraph 1 of this charge to answer special issues from a preponderance of the evidence, except that you are instructed that the burden is upon the plaintiffs to establish the negative of special issue No. 5 by a preponderance of the evidence."

The findings of the jury are supported by substantial evidence and are adopted as the findings of fact by this court in respect to the issues submitted.

These findings establish that Mrs. Sanders, in whom the record title to the lease in question was vested, took title to same in pursuance of an oral agreement theretofore made by the interested parties, in which she was to hold title for the benefit of all of them, and that they were equal owners in the property, and that the purchase of the lease was not made by Mrs. Sanders for her own benefit, but for the benefit of all of them; that Mrs. Sanders paid the entire cash consideration for the lease, under an agreement that Mrs. Stinnette and Mrs. Light would each repay to Mrs. Sanders her proportionate share of $50, and the undisputed evidence shows that each, within about two weeks from the date of purchase, did repay the $50, and that Mrs. Sanders accepted same.

Since the early decision by our Supreme Court in the case of James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743, it has been the settled law of this state that, under such an agreement, the actual title to the lease vested at once in the parties to such prior parol agreement, and since the case of Gardner v. Randell, 70 Tex. 453, 7 S. W. 781, it has been the settled law of this state that the fact that the entire purchase price was paid by the one in whom title to the land was taken, and that the others, jointly interested with such party, did not pay their proportionate share until a subsequent date, in no way affected the joint title to the land; the controlling question being: Was the land purchased and title taken in pursuance of a parol agreement that all were to share in the land? Appellants recognize this rule of law, but claim both by pleading and evidence that whatever parol agreement was had between the parties came subsequent to the vesting of title in Mrs. Sanders, and therefore void under the statute of fraud. If the jury had adopted appellants' theory of the case in this respect, and had made findings in conformity to appellants' evidence on this phase of the suit, then appellees' case would have failed.

█ Appellants, however, contend that the trial court committed reversible error in the manner in which the special issues were

submitted to the jury, also committed reversible error in the refusal to submit certain requested special issues, specifically submitting various defenses, claimed to have been raised by the evidence and not submitted by the court. Appellants further contend that, as the undisputed evidence shows that Mrs. Sanders was a married woman, the oral agreement relied upon by appellees cannot be enforced against her, but can be legally repudiated. These several matters will be discussed in their order.

In passing upon appellants' objections to the court's charge, we must first determine what were the issues made by the pleadings and by the evidence, and bear in mind that the main purpose of the suit was to establish a trust on the land in favor of Mrs. Stinnette and Mrs. Light, with Mrs. Sanders as trustee.

Under the pleadings and the evidence offered by appellees, their case is that Mrs. Sanders was offered the lease to the 15 acres in question for the sum of $150, or $10 per acre; that she, individually, did not want to purchase more than 5 acres, and sought an interview with Mrs. Stinnette for the purpose of persuading her either to take the remaining 10 acres of the lease, or, in company with her son, Ray, each to take a one-third interest; that at the interview, Mrs. Stinnette said that she would take a one-third interest, provided she could pay for it a few days later, when she had some money coming in, and asked permission to call her sister, Mrs. Light, over the telephone, her residence being in Pilot Point, and see if she would not come in for the other one-third interest; that the three of them had been together in another lease and she thought it was due Mrs. Light that she be first invited to make the investment; that Mrs. Light was then interviewed over the telephone by Mrs. Stinnette, and in the presence of Mrs. Sanders, she consented to take a one-third interest, and authorized Mrs. Stinnette to act as her agent in the deal. The statements of Mrs. Light, of course, were not heard by Mrs. Sanders, but were immediately reported to her, with the result that an agreement was entered into, under which Mrs. Sanders was to take the lease as was done; that this agreement was had about December 28, 1930, and the lease, in pursuance of such agreement, was purchased by Mrs. Sanders on January 2, 1931. Appellees' whole case thus rested on the existence of this agreement. Whether such an agreement was entered into, therefore, was the ultimate fact for the jury to pass upon.

On the other hand, appellants' whole defense rested (1) upon the fact that no such agreement was entered into prior to the purchase of the lease by Mrs. Sanders, and (2) that when Mrs. Sanders purchased the lease she intended to, and did, purchase same for herself alone. These are the ultimate facts from appellants' standpoint.

The first objection to the court's submission is that it nowhere presents the defensive issues raised by defendants' pleadings, but only presents the issues raised by appellees' pleadings. Is this true? The question of the existence or nonexistence of the oral contract, alleged and proven by appellees' evidence but denied by appellants' evidence manifestly could be submitted but one way and that in the manner adopted by the court in the submission of special issue No. 1 This issue required the jury to find, from a preponderance of the evidence, that Mrs Sanders, Mrs. Stinnette, and Mrs. Light entered into the agreement previous to the passing of the title of the lease in the name of Mrs. Sanders. The same is also true, in reference to the objections to special issues Nos. 2, 3, and 4. These submissions were, in no way, duplicitous, because they referred only to the existence or the nonexistence of an ultimate fact to be proven in the case. Manifestly, these issues comprehended appellants' defense, that no such contract was entered into.

Appellants' objection to the issues is based on the contention that because there was evidence tending to show that Mrs. Light did not enter into such contract, independent of the evidence tending to show that Mrs. Stinnette did not enter into it, and that by reason thereof there should have been a separate submission as to Mrs. Light, this is not tenable. The theory of appellees, as shown by their pleadings, is that Mrs. Stinnette, in making the contract with Mrs. Sanders, acted for herself and for Mrs. Light and conducted all of the negotiations with Mrs. Sanders in such dual capacity. The undisputed evidence shows that Mrs. Light did not repudiate the action of Mrs. Stinnette, but, on the other hand, acted throughout in support of the contract made by her agent, Mrs. Stinnette.

However, under appellants' theory that there should have been a separate submission of the case as to an agreement by Mrs. Stinnette and an agreement by Mrs. Light,

appellants are in no condition to complain. Under the court's submission, even though the jury might believe that Mrs. Stinnette made the agreement for herself, but did not believe that she made the agreement for Mrs. Light, as her agent, the jury would be compelled to find against appellants.

■ Appellants' defense, to the effect that Mrs. Sanders, when she made the purchase, intended to do so for herself alone, was clearly and fairly submitted by special issue No. 5. We therefore overrule all of appellants' assignments, in respect to the commission of error in overruling their objections to the court's charge, and we believe such charge constituted an admirable submission of the disputed issues of fact to be passed upon by the jury, unincumbered by the submission of any evidentiary fact relating to the ultimate facts. All assignments of error, in respect thereto, are overruled. This also disposes of all assignments of error on the court's refusal to give the requested special issues.

■ A serious question is raised as to whether Mrs. Sanders could repudiate the interest of appellees in the lease, on the ground that she, during the time in question, was under the disability of coverture and that Mrs. Light was also under the same disability. The agreement, found by the jury to have been entered into between the parties, prior to the purchase of the lease, and fully executed by the subsequent purchase, was merely the acquiring by these married women, in their own right, of an interest in real estate. The right of a married woman to acquire and hold property, even real estate, obtains in this state with the proviso that, if she enters into an executory contract, in the purchase of real estate, without the consent of her husband, she may elect to refuse to carry it out, but if she elects to carry out such contract, or her husband subsequently assents thereto, the contract is binding on the purchaser. Pitts v. Elsler, 87 Tex. 347, 28 S. W. 518; 23 Tex. Jur. 217, § 181.

■ Mrs. Sanders entered into a contract with Mrs. Stinnette and Mrs. Light, to purchase the lease and to pay the purchase money. She also contracted with Mrs. Stinnette and Mrs. Light that they would repay her two-thirds of the purchase price of the lease for their two-thirds interest therein, and she accepted the deferred payments for their interests, thus the contract thereby became a completed and binding contract on the parties.

Mrs. Sanders was named as the trustee in the parol trust created by the agreement. She could act as such trustee without the assent or the joinder of her husband. 23 Tex. Jur. § 261, p. 301; Speer on Law of Marital Rights in Texas (3d Ed.) § 327, p. 404. We therefore overrule all assignments of error in respect to this issue.

■ If, however, the assent of the husband should be required, there is abundant evidence in this record showing that the husband actually gave such assent, for assent may be shown by subsequent words, acts, and conduct, indicating approval and acquiescence in the acts of the wife. Lee et al. v. Green, 24 Tex. Civ. App. 109, 58 S. W. 196, 847, Walling v. Hannig, 73 Tex. 580, 11 S. W. 547. Such subsequent acquiescence in the acts of Mrs. Sanders amounts to a ratification of her acts and relates back to the date of the contract. The same is true in respect to Mrs. Light. Houston & T. C. R. Co. v. Chandler, 51 Tex. 416; Heisch v. Adams, 81 Tex. 94, 16 S. W. 790.

We have carefully examined all assignments, and finding no reversible error, it follows that, in our opinion, the judgment of the lower court should in all things be affirmed, and it is so ordered.

Affirmed.