## MAULDIN et al. v. AMERICAN LIBERTY PIPE LINE CO. et al.

### No. 13537.

Court of Civil Appeals of Texas. Dallas.

Nov. 3, 1944.

Rehearing Denied Jan. 5, 1945.

A. C. Scurlock, of Dallas, representing H. C. Mauldin and Buda Mauldin, appellants.

Lester Whipple, of San Antonio, representing Mary Perrenot et al., defendants claiming under F. G. Perrenot, deceased.

Watkins & Mays and Alvin H. Lane, all of Dallas, and William L. Evans, of Fort Worth, for appellees.

BOND, Chief Justice.

This suit is a bill of review to set aside by direct attack a judgment entered in a district court of Dallas County, Texas, on September 19, 1936; in alternative to recover certain proportional title and possession of an undivided one-fourth ($\frac{1}{4}$) interest in an oil and gas lease and profits therefrom; and, incidentally, to establish an accounting and an appointment of a receiver. This bill was originally instituted on January 17, 1939, by H. C. Mauldin and wife, Buda Mauldin, in collaboration with F. A. Perrenot, Lester Whipple, Fannie G. Morgan, Nancy Fritz Moon and husband, A. L. Moon, who were made defendants (afterward intervening), setting up their respective interests in the lease, and, in cross action, adopted all allegations in plaintiffs' petition. During the pendency of the suit, F. A. Perrenot died, and his heirs were substituted parties to the action. The defendants, Whipple, Morgan and the Moons, claim under assignments from Perrenot; the other defendants (appellees herein) claim under the judgment sought to be set aside. In limine, appellees filed motion to dismiss the bill, directing the motion to plaintiffs' pleadings as well as the pleadings of the intervening defendants claiming under Perrenot, alleging that all such pleadings are insufficient to set aside the judgment, and that the defendants (appellees), being the owners of the lease under regular chain of title, were entitled as a matter of law to have the judgment sustained. The court granted appellees' motion, dismissed the suit, and refused appellants' request to further amend their petition.

In sustaining motions to dismiss on demurrers or exceptions, the rule is settled in this state that pleadings are taken as true, except as they are negatived by the unquestioned records in prior suits, or by records of unquestioned facts of which the court may take judicial cognizance. Pleadings contrary to uncontroverted records are taken as mere conclusions of the pleader. Thus it will be seen that the question here presented for decision is whether all of appellants' and intervenors' allegations, when taken together and not negatived by uncontroverted records, state a cause of action. Before detailing plaintiffs' and intervenors' pleadings, the surrounding uncontroverted records pertaining to this controversy, and of which the trial court may well have taken judicial notice in passing on the motion to dismiss, should be related. Such records show:

In 1930, Mesdames Virginia Sanders, J. M. Stinnette and Geo. E. Light entered into a verbal agreement to purchase for their joint use and benefit the oil and gas lease

involved in this suit; each agreeing to pay $50 on the purchase price and have an equal proportional interest therein; Mrs. Sanders was to negotiate and consummate the transaction, pay the purchase price, take title in her name as a matter of convenience, and, after the consummation, the two other ladies were to pay their proportionate part of the consideration. This agreement was carried out as contemplated, consideration paid as agreed, and title to the leasehold taken in name of Mrs. Sanders. At that time the real estate involved was in nonproducing oil territory of the afterwards known Great East Texas Oil Field, designated·in the records as "wild cat".

On April 17, 1931, Mrs. Virginia Sanders, joined by her husband, J. A. Sanders, made and entered into a written agreement with F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin, for development of the leasehold for oil and gas. In that agreement Mrs. Sanders and her husband conveyed title in the lease to Perrenot and the Mauldins upon condition that the grantees would drill an oil well on the leasehold premises without cost or expense to the grantors; and, in event oil and gas, or either of them be produced therefrom in paying quantities, the grantees would pay to the grantors $15,000 in cash, payable out of one fourth (¼) of the first proceeds of oil and gas produced and sold from the lease premises, and one half (½) of all other profits derived from the operation of all wells drilled on said lease. Perrenot and the Mauldins entered into this agreement with Sanders without knowing of any trust estate held by them for the use and benefit of Stinnette and Light. The importance of this conditional conveyance makes it advisable to quote its salient terms. This instrument evidences:

"That F. A. Perrenot, and H. C. Mauldin, and wife, Buda Mauldin, hereinafter called party of the first part, of Bexar County, Texas, and Mrs. Virginia Sanders, joined by her husband, J. A. Sanders, hereinafter called parties of the second part, of Dallas County, Texas, have contracted and agreed with each other as follows:

"1. Party of the second part represent that they are the owners of the mineral estate, including oil and gas thereon, within, upon and under that certain piece, parcel or tract of fifteen (15) acres of land, more or less, same being a part of an original grant of land in the W. H. Castleberry Survey, situated in Gregg County, Texas, said fifteen (15) acres of land, more or less, being described by metes and bounds as follows: A part of a section one hundred seventy (170) acres out of said survey, as described in an oil and gas lease from J. B. Doby and wife and R. W. Calloway and wife to W. W. Lechner, which lease is recorded in Vol. 62, pages 49–51, in the Deed Records, of Gregg County, Texas, the part of said one hundred seventy (170) acre tract affected hereby being the north fifteen (15) acres of the north seventeen and one-half (17½) acres of the West twenty-seven and one-half (27½) acres of the east one half of the above described one hundred seventy (170) acre tract.

"2. The first party being desirous of obtaining the title to said lease, the second parties agree to convey it to him upon the following terms and conditions: The first party may enter into possession thereof and they hereby contract and agree to drill a well for oil on said land, designated herein as 'first well', at such point thereon as may be selected by party of the first part, to the woodbine sand, unless oil is found thereby at a shallower depth, and to that end to have a derrick thereon within thirty (30) days from date hereof, and to begin drilling operations thereon within sixty (60) days from this date, same to be so done without cost or expense to parties of the second part; performance of these terms are conditions precedent to any liability of the second parties.

"3. Upon the completion of such 'first well,' and in the event oil and gas or either is produced therefrom in paying quantities, and when and as same or either is sold, first party agrees to pay to second party the sum of $15,000.00 out of one fourth of the first proceeds thereof, and as such proceeds accumulate and to authorize the purchaser or purchasers of such oil or gas to pay such sums directly to the second party, and the balance of such proceeds, or so much thereof as may be required by party of the first part, shall be and remain available to, and shall be payable to or on the order of, party of the first part for the purpose of and in the drilling of other well or wells on said land by or under the supervision of party of the first part, and party of the first part shall have the right to drill other well or wells on said land to the extent expedient and authorized by law, and therein to use and expend so much of said balance of such proceeds as may be proper and necessary. When and as and

to the extent said balance of such proceeds or any part of same is not necessary or required by party of the first part in and for the drilling of such other well or wells, one half (½) of such excess shall then be paid to party of the first part as further consideration for the purchase hereof.

"4. When said 'first well' has been completed as herein provided, and in the event oil and gas or either is produced therefrom in paying quantities, the title to said mineral estate on said land now owned by party of the second part shall thereupon vest, and same is in that event conveyed by party of the second part to party of the first part, but with the reservation that first party shall in turn pay to second party a sum equal to one half of all profits received by him from the operation of said wells, as same are received.

"5. Party of the second part, or either of them, either by themselves or authorized agent or representative, shall at all reasonable times have access to the record memoranda or report of the log of any well or wells drilled hereunder and other books, records and memoranda made or kept by party of the first part concerning or in any way pertaining hereto.

"6. No partnership is formed by the execution of this agreement, the same being intended as a conditional contract for the assignment of the lease mentioned, and it is expressly understood that the second parties retain no right to direct the manner and means, of performance by the first party of the covenant and conditions herein contained.

"Witness our hands in duplicate originals on this the 17th day of April, 1931." (Signed by the parties.)

The foregoing assignment contract was duly acknowledged by the respective parties thereto on the day of its execution, and duly entered in the Deed Records of Gregg County, Texas, on July 9, 1931.

Following the execution and delivery of the aforesaid conveyance, on April 18, 1931, F. A. Perrenot, H. C. Mauldin and Buda Mauldin executed and delivered to one J. E. Stack the assignment of interest in the leasehold under similar terms and conditions as provided in the Sanders-Perrenot-Mauldin assignment above related, except, Stack agreed to drill the first well, and to pay Perrenot and the Mauldins $15,000 out of one-fourth (¼) of the first proceeds of the first well, and the balance of such proceeds be retained and kept available to and disbursed by Stack for the purpose of and in the drilling of other well or wells on said land; and that three-fourths (¾) of all excess profits be paid to Perrenot and the Mauldins. This assignment was filed and recorded in the Deed Records of Gregg County on July 15, 1931.

Under and by virtue of the two aforesaid conveyances, on July 25, 1931, J. E. Stack transferred, assigned and conveyed to one Charles Pettet one-fourth (¼) of seven-eighths (⅞) of the first oil produced, saved and marketed from said leasehold, as security for a loan of $40,000. This loan was to enable Stack to carry out his drilling contract with the Mauldins and Perrenot, as provided in the two aforesaid conveyances. Subsequently this assignment of interest to Pettet was ratified and confirmed by all contracting parties to the aforesaid contracts, reserving unto each of them all rights under said agreements; each of the signers acknowledging that, in consideration of the premises and the $40,000 paid to Stack by Pettet, the money would run to the mutual benefit of all, and that Stack would use the money to complete the wells on the lease in accordance with the original contracts of April 17, 1931, and April 18, 1931, respectively; and, to make further assurance and protection to Pettet, his heirs and assigns, in the property rights and privileges granted him by the mesne conveyances, (Sanders to Perrenot and Mauldin; Perrenot and Mauldin to Stack; and Stack to Pettet), Virginia Sanders and her husband specially and particularly ratified said two contracts, and acknowledged all rights flowing therefrom.

On August 20, 1931, J. E. Stack executed another over-riding oil payment to appellee, Producers Investment Corporation, on seven thirty-seconds (7/32) of all the first oil in, under and that may be produced, saved and sold from the fifteen acre-leasehold, to secure it for another loan of $40,-000 to enable Stack to comply with and complete the development of the wells as provided by the terms thereof and the terms of the two aforesaid contracts of April 17 and 18, 1931. This loan contract assignment was also duly ratified and confirmed by all contracting parties, and subjected its terms, liens and payments to the terms and conditions of two aforesaid original agreements.

Evidently these various agreements and assignments, if fulfilled, vested title in the

leasehold involved, to the extent disclosed in the contracts of April 17 and 18, 1931, set out above, in F. A. Perrenot, H. C. Mauldin and wife, Buda Mauldin.

On June 1, 1931, Mesdames J. M. Stinnette and Geo. E. Light instituted suit in the One Hundred and One District Court of Dallas County against Mrs. Virginia Sanders, her husband, J. A. Sanders, and J. E. Stack, to recover an undivided two-thirds (2/3) trust interest which they claimed in the fifteen-acre leasehold. The allegations in their petition in this respect were full and complete, relating all the various assignments theretofore made and entered into by Sanders to Perrenot, Mauldin and Stack, and the various working interests and liens created against the oil runs in favor of Pettet and Producers Investment Corporation. It will be observed, in connection with that suit, that the defendants, Virginia Sanders and husband, J. A. Sanders, expressly alleged "that any and all contracts mentioned in plaintiffs' petition for the development of said lease (those set out above) were wise and prudent and had at the minimum expense possible; and in any event were for the benefit of the true owners of said lease; that, the plaintiffs having offered to do equity, it would be inequitable to permit the plaintiffs in this case to recover any interest in said lease under any circumstances except subject to any outstanding contracts for the development thereof, made with these defendants or without creating a lien in favor of these defendants against said property to protect them against any and all reasonable expenditures made by them for the purpose of developing said lease." On trial of the above mentioned cause, Stack abandoned his rights in the lease and settled all issues involved against him; and, as to the plaintiffs Stinnette and Light, judgment was entered in their favor against Mrs. Sanders, her husband and Stack for two-thirds (2/3) undivided interest in the leasehold; and, on appeal to this court, June 2, 1934, the judgment was affirmed. Sanders et al. v. Stinnette et al., 73 S.W.2d 637; writ ref. Much of the history of that suit is related in the opinion and record accompanying the appeal, to which reference is here made and considered; and the trial court may well have taken cognizance of that controversy. None of the appellants here, or their predecessors in title, other than Sanders and Stack, were parties defendant in that suit, hence the judgment could only settle the issues between the parties thereto.

During pendency of the aforesaid suit in the One Hundred and One District Court, Virginia Sanders and husband J. A. Sanders, on April 26, 1931, filed suit in the Fourteenth District Court of Dallas County, naming in their petition J. E. Stack, H. C. Mauldin and wife Buda Mauldin, F. A. Perrenot, Chas. Pettet, Blanche Blewett and Producers Investment Corporation as defendants. The suit, primarily, was for a temporary and permanent injunction to restrain J. E. Stack and F. A. Perrenot from drilling a well on the two and one-half (2½) acre lease lying immediately south and adjacent to the fifteen-acre lease involved here, for the appointment of a receiver to take charge of the lease premises under proper orders of the court, and for an accounting between the plaintiffs and all defendants for oil produced and sold from said lease. Stinnette and Light were not made parties by plaintiffs to that suit. Plaintiffs' petition is full and complete, hinging their respective rights and damages on the several subsisting contracts previously entered into by the parties. In obedience to a preliminary order by the court, as shown by the record, notices were given to each of the named defendants, other than H. C. Mauldin, to show cause against the injunction and the appointment of a receiver. Services of notice on H. C. Mauldin and on F. A. Perrenot are controverted fact issues in this appeal against the notices; each of the defendants, other than H. C. Mauldin, in obedience to the order of the court, filed answers setting out their respective rights under the various contracts between the parties, and each contested only the necessity for the appointment of a receiver. The authenticity of Perrenot's appearance is also raised in this appeal.

It clearly appears from plaintiffs' petition, the preliminary show-cause order of the court, and the answers of the various defendants, that the injunctive relief, appointment of a receiver, and accounting of proceeds from wells on the lease premises in accordance with the various contracts theretofore entered into between the parties, were the only issues involved in that suit. On day of hearing (December 12, 1931), the court recognized and approved an agreement made in open court by the parties present; accordingly entered an order reciting that the defendant Producers Investment Corporation might take charge of and operate the leasehold involved, respecting the terms and provisions of the

contracts and agreements theretofore entered into by and between Virginia Sanders and husband J. A. Sanders, F. A. Perrenot, H. C. Mauldin and wife Buda Mauldin, J. E. Stack, and Producers Investment Corporation, and without prejudice to the right of any of said parties in the leasehold or in the cause pending in the One Hundred and One District Court (Stinnette et al. v. Virginia Sanders et al., supra); and that the rights of all parties in the subject of litigation were, by the order of the court, specifically reserved and unaffected by such agreement. The agreement became the judgment and the court directed its entry upon the minutes of said court. On October 3, 1933, the plaintiffs, Virginia Sanders and husband J. A. Sanders, filed a motion in the cause to continue the temporary injunction theretofore made, restraining further operation of wells on the two and one-half (2½) acre tract by J. E. Stack, H. C. Mauldin and wife Buda Mauldin, F. A. Perrenot, and one Blanche Blewett, claiming that said defendants were confederating together in violation of the temporary injunction; and, further to remove Producers Investment Corporation as receiver for the fifteen-acre leasehold and its operation, and to appoint a regular receiver to act on proper orders of the court. Notices of this motion were served on named attorneys who filed answers purporting to represent the adverse parties. On January 12, 1933, the motion was heard and sustained;—the injunction as to the two and one-half (2½) acres was continued in effect, Producers Investment Corporation removed as receiver, and one J. M. Weaver appointed to operate and manage the estate, collect the proceeds of all oil runs and to do any and all other acts and things, and perform such other duties, as are usual and may be required in the proper, prudent and economical management of said properties. After such appointment, and during the year 1934, the receiver operated the leasehold and managed the estate under orders of the court, for the mutual benefit of all parties having an interest therein.

On July 15, 1935, Mrs. J. M. Stinnette intervened in the above cause, asserting claim of undisputed ownership of an undivided one-fourth (¼) interest in the fifteen-acre leasehold, and sought an order from the court directing and commanding the receiver to pay to her one-fourth (¼) of all sums of money in his possession; and on September 4, 1935, Mrs. Light, Leonard M. Levy and William L. Evans also intervened and asserted joint interest in them equal in proportion to that of Mrs. Stinnette. The record shows that no notices were given to the other parties of the filing of the two intervenors' appearances and motions. On November 2, 1935, the court entered an order distributing the funds in the receiver's hands to said intervenors. On January 11, 1936, William L. Evans, one of the intervenors, who had theretofore been appointed attorney by the court to advise and counsel the receiver, filed an application for a refund of expenditures incurred by him in aid of the receivership's obligations. This application was also allowed by the court without notice to other parties to the suit. On March 23, 1936, a further order was granted to the intervenors for distribution of funds in the hands of the receiver, and again on April 27, May 19, June 20, and July 31, similar orders were granted distributing funds. None of such orders were preceded by notice to the other parties to the suit; and, insofar as the records show, the other parties were not aware of the applications and orders.

On May 15, 1936, the intervenors, Stinnette, Light, Levy and Evans, filed in the aforesaid receivership suit, an original plea of intervention and cross action specifically asserting title to and possession of the fifteen-acre leasehold and properties derived therefrom, as against Virginia Sanders, her husband J. A. Sanders, J. E. Stack, H. C. Mauldin and wife Buda Mauldin, F. A. Perrenot, Chas. Pettet, Blanche Blewett, and Producers Investment Corporation. The record shows that the last named defendant, Producers Investment Corporation, was the only party to the cross action served with citation, and the only defendant that made appearance in said cause. On August 24, 1936, the intervenors, plaintiffs in cross action, filed further pleadings which were joined in by pleadings of the defendant, Producers Investment Corporation, to close the receivership, insisting that all matters in controversy had been settled by agreement of the parties. Accordingly the court set hearing on the pleadings for September 19, 1936, and entered the judgment (which is the basis of this appeal), reciting that all parties to the cause came in person and by attorneys and announced ready for trial, waived the jury and submitted all matters of law and fact to the court; and, after hearing the plead-

ings, evidence and argument of counsel, the court proceeded to divest appellants of all interest in the wells and the profits derived therefrom, and to vest same in appellees in various proportions as claimed by them. We think it is evident from the record that the judgment was an agreed settlement of interest by and between Stinnette, Light, Levy and Evans and the Producers Investment Corporation. So, having been entered by agreement of the said parties, either in person or by attorneys, the judgment must be construed as a contract, subject to the rules relating to such instruments, binding only as to the parties to such an agreement, and none other. Edwards et al. v. Gifford, 137 Tex. 559, 155 S.W.2d 786.

Under plaintiffs' pleadings for bill of review directly attacking the judgment to set it aside for lack of citation or notice, jurisdictional grounds, and fraudulent concealment and practices in its procurement, we are of the opinion that the court erred in sustaining appellees' motion to dismiss, thus depriving appellants of a trial on controversial issues raised in their pleadings. The pleadings are necessarily long, setting out the various contracts and assignments here briefly set out, and the history of transactions among the various parties involving the property in suit. It must be conceded that the trial court had the right to pass on all uncontroversial matters of fact; however, the petition relates issues of fact which the trial court on demurrers and exceptions was not authorized to determine in advance of trial, and which may raise issues to be settled by the court or jury. We will not attempt to relate the details alleged, but will confine this opinion to general conclusions.

The petition for bill of review shows that it was appellants' "Sixth Amended Petition" in lieu of all others theretofore filed, vouching into the suit all parties claiming or to claim an interest in the fifteen-acre lease, the oil and gas produced, and the profits derived therefrom. The petition sets out the judgment sought to be set aside, with sufficient description of the land and the lease involved, and plaintiffs' claim of interest therein as disclosed by the various contracts set out above between the parties. The pleadings fully set out a fulfillment of the consideration for the assignments and full performance of the conditions subsequent for title to vest in accordance with the express terms of the two assignments herein related. Appellants further alleged that the judgment sought to be set aside, was procured unlawfully, wrongfully and fraudulently stating specific averments, thus caused to be entered by sharp practice showing that all parties named in the suit were before the court, that they agreed to waive the jury and submit the cause to the court on evidence produced, and that the court heard evidence and entered the judgment in accordance therewith. Plaintiffs further alleged that the intervenors and the defendant, Producers Investment Corporation, confederated together in having the judgment thus entered without notice to the other named defendants (appellants here), well knowing of their interest in the property involved, thereby divesting them of all right in the subject matter of the suit; and that the defendants were led by the pleadings of plaintiffs and the action of the intervenors to believe that the suit was merely one for injunction and appointment of a receiver to protect the property and interest of all parties claiming or to claim rights thereunder, and not one to divest title out of any party named in the petition. Plaintiffs further alleged that the judgment was conceived in fraud, to consummate the wrong upon defendants (appellants), and with intent to deceive and mislead the court; and, in doing so, the beneficial parties to the judgment violated all rules of the courts of Dallas County requiring notices to be given to all adverse parties in litigation of the day for trial. The allegations of fraud and deception permeating full and complete in appellants' petition, if true, clearly would justify the setting aside of the judgment.

The issue of laches in appellants failing to assert their interest in the suit before judgment, and move to set the judgment aside, are clearly issues determinable on trial.

In view of the allegations, and the disclosures of the records, of which the trial court may have taken judicial knowledge, we are of the opinion that the appellants present questions that cannot be determined on demurrers. Appellants are entitled to trial on the issues, and, on another trial, permitted to further amend. The judgment is reversed and remanded.

Reversed and remanded.